Melissa S. Hayward
Texas Bar No. 24044908
MHayward@FSLHlaw.com
**FRANKLIN SKIERSKI LOVALL HAYWARD LLP**
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110
**COUNSEL FOR CONTINENTAL COMMON, INC.**

William L. Wallander
Texas Bar No. 20780750
BWallander@VElaw.com
**VINSON & ELKINS L.L.P.**
3700 Trammell Crow Center
2001 Ross Avenue
Dallas, TX 75201
Fax: (214) 220-7716
**COUNSEL TO PNC BANK, N.A.**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **CONTINENTAL COMMON, INC.,** | § | **Case No. 10-37542-HDH** |
| | § | **Chapter 11** |
| Debtor. | § | |

# JOINT PLAN OF REORGANIZATION OF CONTINENTAL COMMON, INC.

### Table of Contents

ARTICLE I        Introduction ......................................................................................... 6

ARTICLE II        Definitions ........................................................................................... 6

2.1.   1933 Act .................................................................................................6
2.2.   1010 Common Property ..........................................................................6
2.3.   Accounting Expenses .............................................................................6
2.4.   Administrative Expense ..........................................................................6
2.5.   Allowed ..................................................................................................6
2.6.   Allowed Administrative and Priority Claims ...........................................7
2.7.   Allowed Claim ........................................................................................7
2.8.   Allowed Priority Claim ...........................................................................7
2.9.   Allowed Priority Tax Claim .....................................................................7
2.10.   Allowed Interest .....................................................................................7
2.11.   Allowed Secured Claim ..........................................................................7
2.12.   Allowed Tax Claims ...............................................................................7
2.13.   Allowed Unsecured Claim ......................................................................7
2.14.   Assets ....................................................................................................7
2.15.   Bankruptcy Case ....................................................................................8

2.16. Bankruptcy Code ..................................................................................8
2.17. Bankruptcy Court .................................................................................8
2.18. Bar Date ..............................................................................................8
2.19. Business Day ........................................................................................8
2.20. Claim ...................................................................................................8
2.21. Claimant ..............................................................................................8
2.22. Class ....................................................................................................8
2.23. Collateral .............................................................................................8
2.24. Collateral Transfer ...............................................................................8
2.25. Confirmation Date ................................................................................8
2.26. Confirmation Order ..............................................................................9
2.27. Contested.............................................................................................9
2.28. Continental Common Loan ...................................................................9
2.29. Continental Common Lease Note ..........................................................9
2.30. Corporation Documents ........................................................................9
2.31. Creditor ...............................................................................................9
2.32. Cure Claim ..........................................................................................9
2.33. Debtor or Debtor-in-Possession ...........................................................9
2.34. Disallowed ...........................................................................................9
2.35. Distributions .......................................................................................10
2.36. Distribution Account ..........................................................................10
2.37. Distribution Agent .............................................................................10
2.38. Disclosure Statement ..........................................................................10
2.39. Effective Date .....................................................................................10
2.40. Equity Security Holder .......................................................................10
2.41. Executory Contracts ...........................................................................10
2.42. Final Confirmation Order ....................................................................10
2.43. Final Order .........................................................................................10
2.44. General Unsecured Claim ....................................................................10
2.45. Gross Revenues...................................................................................10
2.46. Insider ................................................................................................11
2.47. Interests ..............................................................................................11
2.48. Lacy Longhorn Property ......................................................................11
2.49. LIBOR ................................................................................................11
2.50. Lien ....................................................................................................11
2.51. Marine Creek Property ........................................................................11
2.52. Net Cash Flow .....................................................................................11
2.53. Objection ............................................................................................11
2.54. Objection Deadline .............................................................................12
2.55. Person .................................................................................................12
2.56. Petition Date .......................................................................................12
2.57. Plan ....................................................................................................12
2.58. Plan Documents ..................................................................................12
2.59. Plan Proponents ..................................................................................12
2.60. PNC ....................................................................................................12
2.61. PNC Loan............................................................................................12

2.62.    Priority Claim .................................................................................................. 12
2.63.    Priority Tax Claim ......................................................................................... 12
2.64.    Professional .................................................................................................... 12
2.65.    Propel ............................................................................................................. 12
2.66.    Proof of Claim ............................................................................................... 12
2.67.    Property Manager .......................................................................................... 13
2.68.    Property of the Reorganized Debtor ............................................................. 13
2.69.    Properties ....................................................................................................... 13
2.70.    Pro Rata Share ............................................................................................... 13
2.71.    Releasing Parties ........................................................................................... 13
2.72.    Reorganized Debtor ...................................................................................... 13
2.73.    Secured Claim ............................................................................................... 13
2.74.    Secured Tax Claim ........................................................................................ 13
2.75.    Secured Creditor ........................................................................................... 13
2.76.    Schedules ....................................................................................................... 13
2.77.    Tax Claim ...................................................................................................... 13
2.78.    Taxing Authority ........................................................................................... 13
2.79.    TCI ................................................................................................................ 13
2.80.    TCI Loan ....................................................................................................... 13
2.81.    Unsecured Creditor ....................................................................................... 14

ARTICLE III      Treatment of Administrative Expenses ..................................... 14

3.1.     Administrative Expenses ............................................................................... 14

ARTICLE IV      Classification of Claims and Interests ....................................... 15

4.1.     Non-Class 1 .................................................................................................... 16
4.2.     Class 2 ............................................................................................................ 16
4.3.     Class 3 ............................................................................................................ 16
4.4.     Class 4 ............................................................................................................ 16
4.5.     Class 5 ............................................................................................................ 16
4.6.     Class 6 ............................................................................................................ 16
4.7.     Class 7 ............................................................................................................ 16
4.8.     Class 8 ............................................................................................................ 16
4.9.     Class 9 ............................................................................................................ 16
4.10.    Class 10 .......................................................................................................... 16

ARTICLE V      Impairment of Classes ............................................................... 16

ARTICLE VI      Treatment of Classes ................................................................. 16

6.1.     Non-Class 1: Administrative Expense and Certain Priority Claims ................... 16
6.2.     Class 2: Certain Priority Claims .................................................................... 17
6.3.     Class 3; Allowed Secured Claims of Taxing Authorities ............................. 17
6.4.     Class 4; Allowed Secured Claim of PNC ...................................................... 18
6.5.     Class 5; Allowed Secured Claim of Propel .................................................... 21
6.6.     Class 6; Allowed Secured Claim of John Monlezun ...................................... 21
6.7.     Class 7; Convenience Class of Unsecured Claims Less than $2,500.00 ............. 22
6.8.     Class 8; Allowed General Unsecured Claims ................................................ 22

6.9. Class 9; General Unsecured Claims of TCI and Continental Common Lease Inc .................................................................................22

6.10. Class 10; Interests .................................................................................22

ARTICLE VII    Acceptance or Rejection of this Plan ..............................................23

7.1. Classes Entitled to Vote ..........................................................................23
7.2. Acceptance by Impaired Classes of Claims ............................................23
7.3. Cramdown ...............................................................................................23

ARTICLE VIII   Sales of Property and Distribution of Proceeds upon Sale or Refinancing of Property ................................................................. 23

ARTICLE IX    Means of Implementation.................................................................. 24

9.1. Conditions Precedent to the Effective Date ............................................24
9.2. Securities Laws .......................................................................................25
9.3. Funding of Plan .......................................................................................25
9.4. Distribution Agent ...................................................................................26
9.5. Vesting of Assets .....................................................................................26
9.6. Amendments to Corporate Documents ....................................................26
9.7. Assumption of Allowed Claims ...............................................................26
9.8. Attorneys' Fees and Costs .......................................................................26
9.9. Post-Petition Taxes and Insurance ..........................................................27
9.10. Disputed Claims or Interests ...................................................................27
9.11. Rescission of Continental Common Lease Note ......................................27

ARTICLE X    Retention, Enforcement, Settlement or Adjustment of Claims ........ 27

10.1. Time for Filing Claims............................................................................27
10.2. Objection Deadline .................................................................................27
10.3. Distributions on Account of Contested Claims .......................................28
10.4. No Waiver of Right to Object ..................................................................28
10.5. Rights Under Section 505 .......................................................................28
10.6. Allowance of Contested Claims...............................................................28
10.7. Allowance of Certain Claims ..................................................................28
10.8. Substantial Consummation ......................................................................29
10.9. Retention of Claims and Causes of Action ..............................................29

ARTICLE XI    Retention of Jurisdiction .................................................................. 29

ARTICLE XII    Executory Contracts and Treatment of Tenant Security Deposits ................... 30

12.1. Motion to Assume....................................................................................30
12.2. Notice of Assumption ..............................................................................30
12.3. Effect of Assumption ...............................................................................31
12.4. Cure Claims .............................................................................................31
12.5. Security Deposits .....................................................................................31

ARTICLE XIII   Effect of Confirmation .................................................................... 31

13.1. Discharge .................................................................................................31
13.2. Legal Binding Effect................................................................................32

13.3. Moratorium, Injunction and Limitation of Recourse For Payment ......................32
13.4. Term of Injunction or Stays ........................................................................32
13.5. Release and Covenant Not to Sue ...............................................................33
13.6. PNC Release and Covenant Not to Sue .......................................................34
13.7. Insurance ...................................................................................................34

ARTICLE XIV   Substantial Consummation ..............................................................35

ARTICLE XV   Miscellaneous Provisions ................................................................35

15.1. Corporate Allocations ...............................................................................35
15.2. No Double Recovery ..................................................................................35
15.3. Valuation Hearing .....................................................................................35
15.4. Compliance With Tax Requirements ...........................................................35
15.5. Revocation, Withdrawal or Non-Consummation ..........................................35
15.6. Severability of Plan Provisions ..................................................................35
15.7. Exemption from Transfer Taxes and Recording Fees ...................................36
15.8. Interest Accrual ........................................................................................36
15.9. Rules of Interpretation; Computation of Time .............................................36
15.10. Reservation of Rights ................................................................................37
15.11. Further Assurances ...................................................................................37
15.12. Successors and Assigns .............................................................................37
15.13. Governing Law .........................................................................................37
15.14. Notice of Effective Date ...........................................................................37
15.15. Waiver of Stay ..........................................................................................37
15.16. Modification of Plan .................................................................................37
15.17. Entire Agreement ......................................................................................38
15.18. Orders in aid of Confirmation ...................................................................38

DATED:      June 14, 2011

# ARTICLE I
## Introduction

Continental Common, Inc. (the "<u>Debtor</u>") and PNC Bank, N.A. ("<u>PNC</u>"), submit this *Joint Plan of Reorganization of Continental Common, Inc.* (the "<u>Plan</u>") pursuant to Section 1121(a) of the United States Bankruptcy Code (11 U.S.C. 101, *et seq.*, the "<u>Bankruptcy Code</u>"). Reference is hereby made to the *Disclosure Statement under 11 U.S.C. § 1125 in Support of the Joint Plan of Reorganization of Continental Common, Inc. Dated June 14, 2011* (the "<u>Disclosure Statement</u>") for a discussion of, among other things, the history, businesses, properties, results of operations, risk factors, and a summary and analysis of this Plan, and related matters. All holders of Claims, Liens and Equity Interests are encouraged to read both this Plan and the Disclosure Statement before voting to accept or to reject this Plan. In the event of any inconsistencies between this Plan and Disclosure Statement, the terms and provisions of this Plan shall control. The Plan Proponents reserve the right to alter, amend, modify, revoke, or withdraw this Plan prior to its substantial consummation pursuant to the terms of this Plan.

# ARTICLE II
## Definitions

A.    <u>Defined Terms</u>

For purposes of this Plan and the accompanying Disclosure Statement, the following terms shall have the meanings set forth below when used in initially capitalized form in this Plan:

2.1.    <u>1933 Act</u>.  The Securities Act of 1933, as amended, and the rules and regulations as promulgated thereunder.

2.2.    <u>1010 Common Property</u>.  The office building located at 1010 Common St. in New Orleans, LA 70112 and the various ground leases and land associated therewith.

2.3.    <u>Accounting Expenses</u>.  Expenses incurred by the Debtor or the Reorganized Debtor (as applicable) for the maintenance of its books and records, preparation of Debtor's financial reports, tax returns and fulfillment of reporting and auditing obligations to its lenders and other parties.

2.4.    <u>Administrative Expense</u>.  Any cost or expense of administration of the Chapter 11 case allowed under subsections 503(b) and 507(a)(2) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the estate of the Debtor, any actual and necessary expenses of operating the business of the Debtor, all compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under section 330 or 503 of the Bankruptcy Code, and any fees or charges assessed against the estate of the Debtor under section 1930, chapter 123 of title 28 of the United States Code.

2.5.    <u>Allowed</u>.  When used with respect to a Claim (other than an Administrative Expense), means a Claim (a) to the extent it is not Contested; or (b) a Contested Claim, proof of which was filed timely with the Bankruptcy Court, and (i) as to which no objection was filed by the Objection Deadline, or (ii) as to which an Objection was filed by the Objection Deadline, to the extent, if any, such Claim is ultimately allowed by a Final Order; <u>provided</u> <u>however</u>, if a

Claim is to be determined in a forum other than the Bankruptcy Court, such Claim shall not become Allowed until determined by Final Order of such other forum and allowed by Final Order of the Bankruptcy Court. "Allowed," when used with respect to an Administrative Expense, shall mean an Administrative Expense approved by application to the Bankruptcy Court.

2.6. <u>Allowed Administrative and Priority Claims</u>. The Allowed Claim of: (i) all administrative expenses of the Debtor's Chapter 11 case allowable under Section 503(b) of the Bankruptcy Code; (ii) all Allowed Unsecured Claims entitled to priority under Section 507(a)(3) and (4) of the Bankruptcy Code for wages, salaries, vacation, severance, sick pay or commissions; (iii) all priority tax claims of governmental units, exclusive of those tax claims defined as "<u>Allowed Tax Claims</u>"; and (iv) all quarterly fees and other expenses payable to the United States Trustee in connection with the administration of the Debtor's Chapter 11 case.

2.7. <u>Allowed Claim</u>. A Claim against the Debtor that is Allowed.

2.8. <u>Allowed Priority Claim</u>. A Priority Claim to the extent that it is or has become an Allowed Claim, but which, in any event, will be reduced by the amount of any offsets, credits, or refunds to which the Debtor shall be entitled on the Confirmation Date.

2.9. <u>Allowed Priority Tax Claim</u>. A Priority Tax Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits or refunds to which the Debtor shall be entitled on the Confirmation Date.

2.10. <u>Allowed Interest</u>. The equity interests held by an equity security holder in or against the Debtor: (i) in respect of which a Proof of Interest has been timely filed with the Bankruptcy Court by the Bar Date, or, with leave of the Bankruptcy Court and without objection by any party in interest, late filed, and as to which neither the Debtor nor any party in interest files an objection or as to which the interest is allowed by Final Order of the Bankruptcy Court; or (ii) scheduled in the list of equity security holders in the Debtor, as the same may have been amended, prepared and filed with the Bankruptcy Court pursuant to Bankruptcy Rule 1007(a)(3), as to which no objection to the allowance thereof has been filed, or as to which any such objection has been adjudicated and determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending.

2.11. <u>Allowed Secured Claim</u>. A Secured Claim to the extent that it is Allowed.

2.12. <u>Allowed Tax Claims</u>. The Allowed Claim of all Allowed Unsecured Claims of governmental units to the extent entitled to priority under Section 507(a)(7) of the Bankruptcy Code, if any.

2.13. <u>Allowed Unsecured Claim</u>. A General Unsecured Claim against the Debtor that is Allowed. This includes all claims deemed unsecured or undersecured pursuant to Section 506(a) of the Bankruptcy Code.

2.14. <u>Assets</u>. All right, title, and interest in and to all property of every type or nature owned or claimed by the Debtor as of the Petition Date, together with all such property of every

type or nature subsequently acquired by the Debtor through the Effective Date, whether real or personal, tangible or intangible, and wherever located, and including, but not limited to, property of the estate as determined by section 541 of the Bankruptcy Code. Without limiting the generality of the foregoing, this shall include all of the Debtor's claims, causes of action, remedies and all causes of action under chapter 5 of the Bankruptcy Code.

2.15. <u>Bankruptcy Case</u>. Case number 10-37542-HDH pending in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division.

2.16. <u>Bankruptcy Code</u>. The United States Bankruptcy Code, Title 11, United States Code.

2.17. <u>Bankruptcy Court</u>. The United States Bankruptcy Court for the Northern District of Texas, Dallas Division, having jurisdiction over this Bankruptcy Case, or the United States District Court for the Northern District of Texas acting as a court of bankruptcy.

2.18. <u>Bar Date</u>. March 2, 2011, as the final date for filing Proofs of Claim, as directed by either the Bankruptcy Court or otherwise established pursuant to Bankruptcy Rule 3003(c)(3).

2.19. <u>Business Day</u>. A day, other than a Saturday or a Sunday, on which national banks are authorized or required by applicable law to be open for business in the Dallas, Texas area.

2.20. <u>Claim</u>. Either: (i) a right to payment from the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (ii) any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured.

2.21. <u>Claimant</u>. The holder of a Claim.

2.22. <u>Class</u>. A category of holders of Claims or Interests which are substantially similar to the other Claims or Interests in such class and which have been designated as a Class in this Plan.

2.23. <u>Collateral</u>. Any Asset subject to a valid and enforceable Lien to secure payment of a Claim, including any right of offset asserted against any such Asset.

2.24. <u>Collateral Transfer</u>. (A) The transfer of the Marine Creek Property and the Lacey Longhorn property from TCI to the Debtor that occurred prior to the Petition Date and (B) the transfer of certain ground leases and underlying land associated with the 1010 Common Property from Continental Common Lease Inc. to the Debtor that occurred prior to the Petition Date.

2.25. <u>Confirmation Date</u>. The date upon which the Bankruptcy Court shall enter the Confirmation Order, provided that, if the Confirmation Order or consummation of the Plan is stayed or enjoined pending appeal, the Confirmation Date shall be the date that a Final Order vacating, terminating, annulling, or dissolving such stay or injunction is entered or on which such stay or injunction expires and is no longer in force or effect.

2.26.  <u>Confirmation Order</u>.  An Order of the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code, as such Order may be amended, modified, or supplemented.

2.27.  <u>Contested</u>.  When used with respect to a Claim, a Claim: a) that is listed in the Schedules of the Debtor as disputed, contingent, or unliquidated, or in the amount of $0.00 or unknown; b) that is listed in the Schedules of the Debtor as undisputed, liquidated, and not contingent and as to which a proof of Claim has been filed with the Bankruptcy Court, to the extent the proof of Claim amount exceeds the scheduled amount; c) that is not listed in the Schedules of the Debtor, but as to which a proof of Claim has been filed with the Bankruptcy Court; d) any Claim as to which an objection has been or may be timely filed and which Claim has not been Allowed by a Final Order; or (e) any Claim for which the proof of Claim is filed after the Bar Date.

2.28.  <u>Continental Common Loan</u>.  That certain loan evidenced by documents executed and delivered to PNC (as successor in interest to National City Bank) by the Debtor, including, without limitation, that certain Promissory Note dated as of June 17, 2004, as modified by those certain Promissory Note Modification Agreements by and between the Debtor and National City Bank dated July 26, 2007, November 28, 2007, and May 30, 2008; that certain Reinstatement, Modification, Renewal, and Extension Agreement dated June 10, 2010 by and between the Debtor and PNC; and all notes, security agreements, assignments, pledges, mortgages, deeds of trust, guaranties, forbearance agreements, and other instruments or documents executed in connection therewith or related thereto, and as same may be ratified, modified, and/or amended by the Plan and the Plan Documents.

2.29.  <u>Continental Common Lease Note</u>.  That certain note originally issued to TCI by the Debtor in connection with the transfer of the rights under certain ground leases and certain property from Continental Common Lease Inc. to the Debtor prior to the Petition Date.

2.30.  <u>Corporation Documents</u>.  The Articles and Certificate of Incorporation of the Debtor or Reorganized Debtor (as applicable), as the same may have heretofore been amended, modified, supplemented, or restated in whole or in part, and as such Corporation Documents are amended and modified by the provisions of this Plan.

2.31.  <u>Creditor</u>.  A Person that holds a Claim.

2.32.  <u>Cure Claim</u>.  A Claim relating to amounts that the Bankruptcy Court determines by Final Order to be necessary to cure all defaults, if any, and to pay all losses that have resulted from defaults, under an executory contract or unexpired lease of real property listed in **Exhibit A** attached hereto.

2.33.  <u>Debtor or Debtor-in-Possession</u>.  Continental Common, Inc., the debtor in the above-captioned Chapter 11 bankruptcy case.

2.34.  <u>Disallowed</u>.  When used with respect to all or any part of a Claim or Interest, that portion of a Claim or Interest to which an Objection or motion to disallow has been sustained by a Final Order or, as to a Contested Claim, any portion thereof which is not allowed by a Final Order of the Bankruptcy Court.

2.35.   Distributions.  The assets, cash, property, or payments required to be distributed or paid to holders of Allowed Claims under the Plan.

2.36.   Distribution Account.  A bank account at a federally insured institution from which all Distributions will be made pursuant to the Plan.  The Distribution Agent is the sole signatory on the Distribution Account.

2.37.   Distribution Agent.  An officer of the Reorganized Debtor, or such successor as may be appointed by the Reorganized Debtor in a writing filed with the Bankruptcy Court, that will make all Distributions required in order to close and implement the Plan and forward the Distributions due to Creditors under the Plan.

2.38.   Disclosure Statement.  The *Disclosure Statement under 11 U.S.C. § 1125 in Support of the Joint Plan of Reorganization of Continental Common, Inc. Dated June 14, 2011* filed by Debtor in conjunction with the filing of this Plan, as such Disclosure Statement may be modified, amended, restated, or supplemented from time to time in whole or in part in accordance with the Bankruptcy Code and approved by the Bankruptcy Court.

2.39.   Effective Date.  The first Business Day after all the conditions precedent to the Plan have been satisfied or waived by the Plan Proponents in accordance with this Plan and upon which the Plan shall become effective and upon which Distributions pursuant to the Plan shall commence.

2.40.   Equity Security Holder.  ABC Land & Development, Inc., the entity holding 100% of the Debtor's equity security interests as of the Petition Date.

2.41.   Executory Contracts.  Any and all unexpired leases or executory contracts to which the Debtor is a party and which are subject to Section 365 of the Bankruptcy Code.

2.42.   Final Confirmation Order.  The Confirmation Order once it becomes a Final Order.

2.43.   Final Order.  An order of the Bankruptcy Court or any other court of competent jurisdiction which has not been reversed, stayed, modified, amended, vacated, or otherwise altered and in respect of which all applicable time periods for filing an appeal or seeking review of such order shall have expired so that such order has become final in accordance with the Federal Bankruptcy Rules.

2.44.   General Unsecured Claim.  General Unsecured Claim means any Claim that is not secured by a valid and enforceable Lien against any Asset, but excluding all:  (a) Administrative Expenses; (b) Priority Claims; and (c) Secured Claims.

2.45.   Gross Revenues.  Revenues generated from, *inter alia*,: (i) the Debtor's or the Reorganized Debtor's (as applicable) liquidation, operation and/or leasing of its Assets; (ii) any other miscellaneous revenue sources, (iii) interest received by the Debtor or the Reorganized Debtor (as applicable) from the investment of its funds, (iv) security and other deposits which are forfeited to the Debtor or the Reorganized Debtor (as applicable) by the parties making such deposits, and (v) utility and other deposits which are refunded to the Debtor or the Reorganized

Debtor (as applicable). The term "Gross Revenues" shall not include: (i) insurance loss proceeds or payments; (ii) any award or other payment made by any governmental unit or authority in conjunction with the exercise or any right of eminent domain or condemnation; (iii) any proceeds from any sale, refinancing, exchange, or other disposition of the Properties; (iv) any payments made on account of any easements or access rights granted by the Debtor which are not material to the operation of the Property; or (v) any capital contributions made by TCI, its designee, or any other entity pursuant to this Plan.

2.46.   Insider.  Any Person described in section 101(31) of the Bankruptcy Code.

2.47.   Interests.  Any equity or ownership interest in the Debtor or the Reorganized Debtor (as applicable) including all stock of any class in the Debtor or the Reorganized Debtor (as applicable).

2.48.   Lacy Longhorn Property.  The approximately 17.115 acres of undeveloped land located at 11600 Luna Road, Farmers Branch, Texas.

2.49.   LIBOR.  (A) with respect to the PNC Loan and the treatment of the Claims of PNC, the definition given in the Plan Documents, and (B) with respect to the treatment of all other Claims, the 30 day LIBOR rate as published by the Bloomberg Financial Markets Information Service ("Bloomberg"), or if such rate is not published by Bloomberg, then by reference to such other publicly available service as mutually agreed upon by Debtor that publishes the 1-month LIBOR rate.

2.50.   Lien.  Any mortgage, lien, charge, security interest, encumbrance, or other security device of any kind affecting any Asset, including any right of setoff or offset asserted against any Asset.

2.51.   Marine Creek Property.  The approximately 43.433 acres of undeveloped land located at 4600, 5201, 5224, and 5325 Shadydell Circle in Fort Worth, Texas.

2.52.   Net Cash Flow.  For any fiscal year (or portion thereof), the aggregate Gross Revenues of the Debtor or the Reorganized Debtor (as applicable), less: (i) operating expenses, including, without limitation, Accounting Expenses and other management and professional fees, incurred by the Debtor or the Reorganized Debtor (as applicable) during such period and (ii) any amounts deposited by Debtor or the Reorganized Debtor (as applicable) in any reserve or escrow account established for the payment of insurance, taxes, repairs, replacements, tenant improvements, leasing commissions, interest, or other similar expenses to be incurred in connection with the operation, maintenance, repair, improvement, or ownership of the Property and the obligations of the Debtor and the Reorganized Debtor (as applicable) under Section 6.4 of the Plan. For purposes of determining Net Cash Flow, Gross Revenues of the Debtor or the Reorganized Debtor (as applicable) shall also be reduced by all expenditures of the Debtor or the Reorganized Debtor (as applicable) for capital improvement to the Property. Net Cash Flow for any applicable period shall be determined and calculated using the cash accounting method.

2.53.   Objection.  An objection to the allowance of a Claim interposed by any party entitled to do so within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, and as to any Taxing Authority, shall

include a proceeding commenced under section 505 of the Bankruptcy Code to determine the legality or amount of any tax.

2.54.  Objection Deadline.  Such date, if any, after the Effective Date as may be fixed by the Bankruptcy Court for the filing of objections to Claims.

2.55.  Person.  An individual, corporation, association, joint stock company, joint venture, trust, unincorporated organization, governmental unit, agency, or other subdivision thereof, or any other entity.

2.56.  Petition Date.  October 28, 2010, the date on which the Debtor filed its Voluntary Petition seeking relief under Chapter 11 of the Bankruptcy Code and on which the Debtor commenced the Bankruptcy Case.

2.57.  Plan.  This Joint Plan of Reorganization of Continental Common, Inc. and all addenda, exhibits, schedules, and other attachments hereto, as amended, modified, restated, supplemented, or altered in whole or in part from time to time.

2.58.  Plan Documents.  (A) Those certain documents to be executed by the Debtor, TCI, and PNC in each of the foregoing parties' respective sole and absolute discretion to evidence the transactions contemplated by the Plan and (B) documents evidencing the rescission of the Continental Common Lease Note and the issuance of a corrected note to Continental Common Lease Inc., all of the foregoing to be filed with the Bankruptcy Court before the hearing on confirmation of the Plan.

2.59.  Plan Proponents.  The Debtor and PNC.

2.60.  PNC.  PNC Bank, N.A., as successor in interest to National City Bank., and its successors and assigns.

2.61.  PNC Loan.  The Continental Common Loan and the TCI Loan, collectively.

2.62.  Priority Claim.  Any Claim entitled to priority under Sections 507(a)(2) through (6), inclusive, of the Bankruptcy Code.

2.63.  Priority Tax Claim.  A Claim of a governmental unit of the kind specified in subsection 507(a)(8) of the Bankruptcy Code.

2.64.  Professional.  Those persons, other than the attorneys and professionals of PNC, retained pursuant to an order of the Bankruptcy Court in accordance with sections 327 and 1103 of the Bankruptcy Code or who are entitled to compensation or reimbursement pursuant to sections 503(b)(3)(D) or 506(b) of the Bankruptcy Code.  For the avoidance of doubt, the term "Professional" shall not include the attorneys and professionals of PNC.

2.65.  Propel.  Propel Financial Services LLC.

2.66.  Proof of Claim.  A written claim or form filed with the Bankruptcy Court describing any Claim of any Creditor pursuant to Bankruptcy Rule 3003.

2.67.    Property Manager.  Regis Realty I, LLC d/b/a Regis Property Management LLC, whose principal offices are at 1800 Valley View Lane, Suite 200, Dallas, Texas 75234, or any other person or entity selected by Debtor or Reorganized Debtor (as applicable) to manage the Properties.

2.68.    Property of the Reorganized Debtor.  All tangible and intangible property and assets of whatsoever kind and nature that vests in the Reorganized Debtor after the Confirmation Date, including, without limitation, the Properties and the Assets.

2.69.    Properties.  The 1010 Common Property, the Marine Creek Property, and the Lacy Longhorn Property.

2.70.    Pro Rata Share.  The proportion that the amount an Allowed Claim (not yet paid) bears to the aggregate amount of all Allowed Claims (not yet paid) with respect to any specific Class, including Contested Claims, but not including Disallowed Claims.

2.71.    Releasing Parties.  TCI, the Debtor, and the Reorganized Debtor.

2.72.    Reorganized Debtor.  The entity in which all of the Assets shall vest on the Effective Date that shall retain ownership, title, and control of all of the Debtor's assets and property after the Confirmation Date and that will assume or retain the Debtor's liabilities as provided in this Plan and the Plan Documents.

2.73.    Secured Claim.  A Claim which is secured by a lien on any property or assets of the Debtor to the extent of the value of such property or assets.

2.74.    Secured Tax Claim.  Any ad valorem tax Claim that arises or is deemed to have arisen on or before the Petition Date, irrespective of the date on which such Claim is assessed or due, to the extent such Claim constitutes a Secured Claim.

2.75.    Secured Creditor.  A Creditor holding a Secured Claim that has been Allowed.

2.76.    Schedules.  The Schedules and Statement of Financial Affairs filed by the Debtor in this Bankruptcy Case, as the same may have been or may hereafter be amended, supplemented, modified, or restated in whole or in part.

2.77.    Tax Claim.  Any Claim for or relating to any type or form of taxes, whether assessed by the United States of America, the IRS or any Taxing Authority, including without limitation property, ad valorem, excise, sales, fuel, income or franchise taxes, and whether the tax is assessed against the Debtor as a taxpayer or as a holder of trust fund taxes.

2.78.    Taxing Authority.  Any federal, state, or local governmental unit having jurisdiction as to Debtor or its property and authority to assess, levy, and collect taxes.

2.79.    TCI.  Transcontinental Realty Investors, Inc. and its successors and assigns.

2.80.    TCI Loan.  That certain loan evidenced by documents executed and delivered to PNC (as successor in interest to National City Bank) by TCI including, without limitation, that

certain Promissory Note dated as of June 17, 2004, as modified by those certain Promissory Note Modification Agreements dated July 26, 2007, November 28, 2007, and May 30, 2008 and the Amendment to Promissory Note and Loan Documents dated October 15, 2008; that certain Reinstatement, Modification, Renewal, and Extension Agreement dated June 10, 2010 by TCI in favor of PNC; and all notes, security agreements, assignments, pledges, mortgages, deeds of trust, guaranties, forbearance agreements, and other instruments or documents executed in connection therewith or related thereto, and as same may be ratified, modified, and/or amended by the Plan and the Plan Documents.

2.81.   Unsecured Creditor.  A Creditor holding an Allowed Unsecured Claim.

In addition to the foregoing definitions, any term defined in the Bankruptcy Code, including Section 101 thereof, shall have the same meaning whenever used in this Plan except to the extent any such defined term is otherwise defined in this Plan or the meaning thereof would contradict or be inconsistent with such term as used herein.

B.   Interpretation.  Unless otherwise specified, all section, article and exhibit references in this Plan are to the respective section in, article of, or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time.  The headings in the Plan are for convenience and reference only and shall not limit or otherwise affect the provisions hereof.  The rules of interpretation set forth in section 102 of the Bankruptcy Code shall apply to the Plan.

C.   Other Terms.  The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan.  References herein to "after notice and hearing" or other similar language shall have the same meaning as in section 102(1) of the Bankruptcy Code.  Otherwise, terms used herein that are not specifically defined herein shall have the meaning ascribed to that term, if any, in the Bankruptcy Code.

D.   Exhibits and Plan Documents.  All Exhibits to the Plan and all Plan Documents are incorporated into the Plan by this reference and are a part of the Plan is if set forth in full herein. All Plan Documents shall be filed with the Clerk of the Bankruptcy Court not less than ten (10) days prior to the commencement of the Confirmation Hearing.  Holders of Claims and Interests may obtain a copy of the Plan Documents, once filed, by a written request sent to the following address: Franklin Skierski Lovall Hayward LLP, 10501 N. Central Expy., Ste. 106, Dallas, Texas 75231, Attention: Melissa S. Hayward; Fax number (972) 755-7114; email: MHayward@FSLHlaw.com.

## ARTICLE III
## Treatment of Administrative Expenses

3.1.   Administrative Expenses.  All Administrative Expenses shall be treated as a Non-Class 1 Claim and shall receive the treatment as described below.

(a)   Time for Filing Administrative Expenses.  The holder of any Administrative Expense Claim, but not including a professional fee claim, a Cure Claim, a liability incurred and paid in the ordinary course of business by the Debtor, or an Administrative Expense previously Allowed by the Bankruptcy Court, must file with the Bankruptcy Court and serve on the Debtor

or the Reorganized Debtor (as applicable) and its counsel an application seeking the Allowance of such Administrative Expense within thirty (30) days after the Effective Date. Failure to timely and properly file an application as required herein shall result in the Administrative Expense being forever barred and discharged. The Reorganized Debtor shall provide notice to all holders of Claims and Interests of this deadline within five (5) business days of the Effective Date.

(b)　　<u>Time for Filing Professional Fee Claims</u>. Each Professional, other than the attorneys and professionals of PNC, who holds or asserts a professional fee claim for compensation for services rendered and reimbursement of expenses incurred prior to the Effective Date shall be required to file with the Bankruptcy Court and serve on all parties required to receive such notice, a fee application within sixty (60) days after the Effective Date. Professional fees and expenses of any Professional incurred on or after the Effective Date may be paid without necessity of application to or Order by the Bankruptcy Court.

(c)　　<u>Allowance of Administrative Expenses</u>. An Administrative Expense with respect to which application has been properly filed as provided herein shall become an Allowed Administrative Expense if no objection is filed within thirty (30) days after its filing and service. If an objection is filed within such thirty (30) day period, the Administrative Expense shall become an Allowed Administrative Expense only to the extent Allowed by a Final Order of the Bankruptcy Court. An Administrative Expense that is a professional fee claim, and with respect to which a fee application has been properly filed in accordance with this Plan, shall become an Allowed Administrative Expense only to the extent allowed by Final Order of the Bankruptcy Court.

(d)　　<u>Payment of Allowed Administrative Expenses other than Cure Claims</u>. Each holder of an Allowed Administrative Expense against the Debtor shall receive, at the Reorganized Debtor's option: (i) payment in full in cash on account of such Allowed Administrative Expense without interest within 30 days of the date such Allowed Administrative Expense is Allowed; or (ii) the amount of such holder's Allowed Claim in accordance with the ordinary business terms of such expense or cost, or (iii) such other treatment as may be agreed to in writing by such Administrative Expense Creditor and the Reorganized Debtor or as ordered by the Bankruptcy Court. Notwithstanding anything herein to the contrary, the Reorganized Debtor is authorized to pay in the ordinary course any Administrative Expense representing a liability incurred in the ordinary course of business by the Debtor.

(e)　　<u>Trustee's Fees</u>. All outstanding quarterly trustee's fees pursuant to 28 U.S.C. §1930(a)(6) shall be paid by the Reorganized Debtor on the Effective Date and thereafter as the same may become due.

(f)　　<u>Cure Claims</u>. Cure Claims shall be treated in accordance with Article XII hereof.

**ARTICLE IV**
**<u>Classification of Claims and Interests</u>**

For purposes of this Plan, the Claims of Creditors and the interests of the Equity Security Holder are divided into the following Classes:

4.1.　Non-Class 1.  Allowed Priority Claims.

4.2.　Class 2.  Certain Allowed Priority Claims

4.3.　Class 3.  Allowed Secured Tax Claims.

4.4.　Class 4.  The Allowed Secured Claim of PNC.

4.5.　Class 5.  The Allowed Secured Claim of Propel Financial Services, LLC

4.6.　Class 6.  The Allowed Secured Claim of John K. Monlezun.

4.7.　Class 7.  All Claims that are less than $2,500.00 in Allowed amount, including Unsecured Creditors holding Allowed Unsecured Claims in a total amount greater than $2,500.00 who elect to be treated as Class 7 Claims by waiving the portion of their Allowed Unsecured Claims exceeding the sum of $2,500.00.

4.8.　Class 8.  All Allowed Unsecured Claims of Unsecured Creditors that are not entitled to priority and other than Class 7 and Class 9 Claims, including all claims arising from the rejection of any Executory Contract and all deficiency claims arising from Classes 2-6.

4.9.　Class 9.  The Allowed General Unsecured Claims of TCI and Continental Common Lease Inc.

4.10.　Class 10.  The Allowed Interests of the equity security holder.

## ARTICLE V
## Impairment of Classes

Classes 2, 3, 4, 5, 6, 7, 8, 9, and 10 are impaired by the Plan, as such impairment is determined and defined in Section 1124 of the Bankruptcy Code.  Non-Class 1 is not a true Class and shall not vote on the Plan.   Class 10, which shall not receive any Distribution or property on account of its Interests, shall not be entitled to vote on the Plan and shall be presumed to vote against the Plan.

## ARTICLE VI
## Treatment of Classes

Upon the Effective Date, the holders of Claims or Interests in the Classes of Creditors and the Equity Security Holder established by this Plan shall receive the following treatment in full satisfaction of such Claims or Interests:

6.1.　Non-Class 1: Administrative Expense and Certain Priority Claims.  Allowed Claims entitled to Administrative Expense treatment shall be paid as provided in Article III hereof.  Allowed Tax Claims entitled to priority treatment pursuant to Section 507(a)(8) shall be treated as Class 3 Claims.

All outstanding quarterly trustee's fees pursuant to 28 U.S.C. §1930(a)(6) shall be paid by the Reorganized Debtor on the Effective Date and thereafter as the same may become due.

Non-Class 1 Claimants are not a true Class and shall not be entitled to vote on the Plan.

6.2.    Class 2: Certain Priority Claims.    Allowed Priority Claims entitled to priority treatment pursuant to Section 507(a)(4) through (a)(7), inclusive, and 507(a)(9) through (a)(10), inclusive shall receive, at the Reorganized Debtor's option: (i) payment in full in cash on account of such Priority Claim without interest in twelve equal monthly payments, the first payment of which will be due and payable on the fifth Business Day of the first month that is more than 30 days after the Effective Date and on the fifth Business Day of each respective month thereafter; or (ii) the amount of such holder's Allowed Claim in accordance with the ordinary business terms of such expense or cost, or (iii) such other treatment as may be agreed to in writing by such priority Creditor and the Reorganized Debtor or as ordered by the Bankruptcy Court. Allowed Tax Claims entitled to priority pursuant to Section 507(a)(8) shall be treated as Class 3 Claims.

Class 2 Claimants are impaired and shall be entitled to vote on the Plan.

6.3.    Class 3; Allowed Secured Claims of Taxing Authorities.    Subject to Section 6.4 of this Plan, within ten (10) days of the Effective Date, the Debtor or the Reorganized Debtor (as applicable) shall pay in full the Allowed Secured Claim of any Taxing Authority. Any perfected liens or security interests securing the Allowed Secured Claim of a Taxing Authority will be preserved and continued until such time as the Allowed Secured Claim of a Taxing Authority is paid in full. Allowed Tax Claims entitled to priority treatment pursuant to Section 507(a)(8) shall be treated as Class 3 Claims.

All Tax Claims shall remain subject to section 505 of the Bankruptcy Code. The Reorganized Debtor shall retain the right to a determination of the amount or legality of any tax pursuant to section 505 of the Bankruptcy Code as to any Tax Claim. The Reorganized Debtor may seek relief pursuant to section 505 of the Bankruptcy Code as a part of, and in conjunction with, any objection to any Tax Claim.

With respect to Allowed Secured Tax Claims, the interest rate paid upon such Claims shall be the rate of interest determined under applicable nonbankruptcy law.

Subject to Section 6.4 of this Plan, post-petition property taxes will be paid when such taxes become due and payable under the laws of the applicable taxing jurisdiction unless a particular Property is sold prior to such time, at which time any Allowed Secured Tax Claim with respect to such Property will be paid in full.

Subject to Section 6.4 of this Plan, nothing herein shall prohibit the Debtor or the Reorganized Debtor from selling any of the Properties at any time provided that the remaining unpaid portion of the Allowed Secured Claim of a Taxing Authority holding an interest in such Property being sold shall be paid in full at such time.

Class 3 Claims are impaired by the Plan.

6.4. Class 4; Allowed Secured Claim of PNC. Any perfected liens or security interests securing the Allowed Secured Claim of PNC will be preserved and continued until such time as the Allowed Secured Claim of PNC is paid in full in accordance with the provisions of this Plan. The Claims of PNC shall be Allowed in the amount of at least $17,595,436.39 as of the Petition Date, subject to adjustment for, among other things, amounts received by PNC, PNC attorney's fees, interest, and any other amounts as provided in the Plan and the Plan Documents.

**Continental Common Loan**: With respect to the Continental Common Loan, the Debtor and PNC will agree upon Plan Documents to modify the Continental Common Loan, structured in form mutually acceptable to PNC and the Debtor that will be filed prior to the hearing on confirmation of the Plan and will be presented as part of the confirmation process, except to the extent agreed upon in writing by the Debtor and PNC in their respective sole and absolute discretion. Upon confirmation of the Plan, the Continental Common Loan will be modified as follows:

(a) The maturity of the Continental Common Loan will be extended from June 30, 2010 to December 31, 2012. The Reorganized Debtor will have a twelve month extension option to extend the maturity of the Continental Common Loan to December 31, 2013. Such extension will be at Libor plus 3.50% with a floor of 4.25%. This extension shall be subject to (i) a loan to value ratio of at least 75% as determined by "as-is" appraisals acceptable to PNC in its sole and absolute discretion, (ii) a minimum 1.10x debt service coverage ratio based on a 25 year amortization and a debt constant of the higher of (a) Libor plus 3.50% with a floor of 4.25% or (b) 5%.

(b) The interest rate of the Continental Common Loan will be Libor (as defined in documents evidencing the Continental Common Loan) plus 3.50% based on interest only.

(c) The Debtor or the Reorganized Debtor (as applicable) will pay interest to PNC on the Continental Common Loan at Libor plus 3.50% from July 1, 2010 through the Effective Date less payments previously received by (i) PNC or (ii) the court appointed keeper prior to the Petition Date. The Debtor will continue to pay interest payments of approximately $50,000 per month to PNC in accordance with the approved budget through the Effective Date.

(d) The Debtor or the Reorganized Debtor (as applicable) shall pay all real estate taxes including all penalties and interest currently due; however, the Debtor or the Reorganized Debtor (as applicable) shall have the option of escrowing the amounts due with PNC while such real estate taxes are contested. The Debtor will determine amounts owed to taxing authorities by obtaining payoff amounts directly from the taxing authorities, and evidence of such amounts will be provided to PNC at closing.

(e) The Debtor and the Reorganized Debtor (as applicable) will establish a monthly real estate tax escrow with PNC for future real estate taxes which will be paid to taxing authorities as such taxes become due.

(f) The Debtor and the Reorganized Debtor (as applicable) and PNC shall enter into a cash management agreement for the purpose of establishing an account into which all revenues shall be deposited (the "Lockbox"). So long as no event of default of the Continental Common

Loan, the TCI Loan, or the Plan shall have occurred, funds in the Lockbox shall be distributed under a waterfall provision (first to interest payment, second to tax escrow, and third to operating expenses subject to an approved budget.)  Any excess cash in the Lockbox, as determined by PNC in its sole and absolute discretion, shall be deposited into a leasing expense/operating expense account held by PNC under a separate agreement (the "Expense Account").  In no event shall such waterfall be considered a consent to subordination of the claims and liens of PNC.  Any withdrawals from the Expense Account shall be subject to PNC's approval in its sole and absolute discretion, which approval shall not be unreasonably withheld.  Until such time as PNC shall have been paid in full per the terms of the Continental Common Loan documents, no funds in either account shall be used for any expense related to the real property located in Texas that secures the TCI Loan including, without limitation, payment of any principal or interest on any loan secured thereby other than amounts that may be or may become due and owing to PNC, or any taxes associated therewith.

(g)     The Debtor or the Reorganized Debtor (as applicable) shall be responsible for any and all leasing and operating expense not covered by funds then available in the Expense Account.  Shortfalls may subsequently be recouped as the account is replenished.

(h)     The Debtor or the Reorganized Debtor (as applicable) will provide PNC monthly a property operating statement, rent roll, and leasing status report.

**TCI Loan**:  With respect to the TCI Loan, the Debtor and PNC will agree upon Plan Documents to modify the TCI Loan, structured in form mutually acceptable to both the Debtor and PNC, that will be filed prior to the Confirmation Hearing and be presented as part of the Plan confirmation process, except to the extent agreed upon in writing by PNC and the Debtor in each of their respective sole and absolute discretion.  Upon confirmation of the Plan, the TCI Loan will be modified as follows:

a.     The maturity of the TCI Loan shall be extended from June 30, 2010 to December 31, 2012.  The Reorganized Debtor and TCI will have a twelve month extension option to extend the maturity of the TCI Loan to December 31, 2013.  Such extension will be at Libor plus 3.50% with a floor of 4.25%.  This extension shall be subject to (i) a loan to value ratio of at least 75% as determined by "as-is" appraisals acceptable to PNC in its sole and absolute discretion, (ii) a minimum 1.10x debt service coverage ratio based on a 25 year amortization and a debt constant of the higher of (a) Libor plus 3.50% with a floor of 4.25% or (b) 5%.

b.     The interest rate of the TCI Loan shall be Libor (as defined in the documents evidencing the TCI Loan) plus 3.50%, interest only, effective June 30, 2010.

c.     TCI will pay interest to PNC at Libor plus 3.50% from July 1, 2010 through the closing date.

d.     TCI will pay all real estate taxes due.  TCI will determine amounts owed to taxing authorities by obtaining payoff amounts directly from the taxing authorities, and evidence of such amounts will be provided to PNC at closing.

e.   TCI will establish a monthly real estate tax escrow with PNC, which will be paid to taxing authorities as such taxes become due.

f.   If any property securing the TCI Loan is sold and TCI and the Debtor or the Reorganized Debtor (as applicable) are not in default of the TCI Loan, the Continental Common Loan, the Plan, or the Plan Documents as determined by PNC in its sole and absolute discretion, PNC shall release its lien on its applicable collateral sold promptly at or about the closing of such sale upon the receipt in cash of proceeds of such sale of the greater of (i) $2,600,000 as to the land that secures the TCI Loan that is located in Dallas, Texas and $3,185,000 as to the land that secures the TCI Loan that is located in Fort Worth, Texas, (ii) 100% of the proceeds of such sale, net of closing costs that are approved by PNC in its sole and absolute discretion, which, to the extent that the TCI Loan has been paid in full, shall be applied against the Continental Common Loan, or (iii) provided the Continental Common Loan is paid in full, 100% of the then outstanding principal of the TCI Loan plus all interest and fees thereon. Once both the TCI Loan and the Continental Common Loan are paid in full and TCI and the Debtor have satisfied all obligations under this Plan and the Plan Documents, any proceeds shall be remitted to the Debtor.

g.   TCI, the Debtor, and/or the Reorganized Debtor (as applicable) shall absolutely, irrevocably and unconditionally indemnify and at all times hold harmless PNC from all obligations, losses, damages (whether direct, indirect or consequential), charges, liabilities, claims (legal or equitable), expenses, and suits, of any nature whatsoever, and any and all costs and attorneys' fees incurred in connection therewith, which PNC may suffer, incur, or be subject to as a result of the Collateral Transfer, including, but not limited to, actions brought by or on behalf of TCI, the Debtor, the Reorganized Debtor, Continental Common Lease Inc., or any other Person pursuant to any state or federal fraudulent transfer, fraudulent conveyance, or debtor-creditor statutory or common law including, without limitation, sections 544, 547 or 548 of the Bankruptcy Code (or such successor statutory provision as may provide for a similar remedy) and the Uniform Fraudulent Transfer Act and the Uniform Fraudulent Conveyance Act (as adopted by any state) seeking the avoidance or any attempted avoidance of (a) any transfer of an interest of TCI, Continental Common Lease Inc., the Debtor, and/or the Reorganized Debtor in property or (b) any obligation incurred by TCI, Continental Common Lease Inc., the Debtor, and/or the Reorganized Debtor.

Prior to the confirmation hearing on the Plan, the Debtor shall obtain estoppel letters acceptable to PNC in its sole and absolute discretion as to any leased property which will be part of the Plan Documents.

Upon confirmation of the Plan, the Debtor or the Reorganized Debtor (as applicable) shall pay to PNC in immediately available funds an amount equal to $125,000 for attorney's fees and costs incurred by PNC in connection with the Continental Common Loan, the Transcontinental Loan, and the Bankruptcy Case.

Within 5 days of entry of the Confirmation Order, the Debtor or the Reorganized Debtor (as applicable) and TCI will deposit amounts to be paid to PNC or held in an account at PNC per the terms of this Plan at or prior to closing in either (i) an escrow account with PNC or (ii) a segregated cash account to be held and not used by the Debtor or the Reorganized Debtor (as applicable).

PNC shall have the right, in its sole and absolute discretion, to demand remediation by the Debtor or the Reorganized Debtor (as applicable) or TCI of any environmental issue that may decrease the value of PNC's collateral that secures the Continental Common Loan or the TCI Loan. The failure of the Debtor or the Reorganized Debtor (as applicable) or TCI to perform such remediation to the extent required by PNC, in PNC's sole and absolute discretion, shall constitute a breach of the Plan and the Plan Documents and shall relieve PNC of all obligations hereunder.

Class 4 is impaired.

6.5. Class 5; Allowed Secured Claim of Propel. Except to the extent that Propel agrees to different treatment, the Allowed Secured Claim of Propel shall be paid with monthly cash payments including applicable interest over a period not exceeding five years from the Petition Date. The first payment will be due and payable on the fifth Business Day of the first month that is more than 30 days after the Effective Date. The interest rate paid upon the Allowed Secured Claim of Propel shall be the contract rate of 12.50% per annum

The Allowed Secured Claim of Propel will continue to be secured by its lien and security interest in the Collateral securing the Propel Loan. Propel shall, upon payment and satisfaction of the Allowed Secured Claim of Propel, execute releases of any remaining encumbrances upon the Lacy Longhorn and/or Marine Creek Properties in a form satisfactory to the Reorganized Debtor and shall deliver same to the Reorganized Debtor or its designee. Subject to Section 6.4 of this Plan, nothing herein shall prohibit the Reorganized Debtor from refinancing or selling the Lacy Longhorn and/or Marine Creek Properties at any time provided that the remaining unpaid portion of the Allowed Secured Claim of Propel shall be paid in full at such time.

Class 5 is impaired under the Plan.

6.6. Class 6; Allowed Secured Claim of John Monlezun. Except to the extent that John Monlezun agrees to different treatment, the Allowed Secured Claim of John Monlezun shall be paid in full within five years of the Effective Date by either the refinancing of the remaining unpaid portion of the Allowed Secured Claim of John Monlezun or the sale of the 1010 Common Property. Until such time as the remaining unpaid portion of the Allowed Secured Claim of John Monlezun is refinanced or otherwise satisfied, which shall occur by no later than sixty (60) months from the Effective Date, the Reorganized Debtor shall make monthly payments to John Monlezun comprised of interest only at the rate of 12% per annum. Mr. Monlezun may also receive from time to time certain payments from the Debtor reducing the outstanding principal amount of the Allowed Secured Claim of John Monlezun as provided in this Plan. The first monthly payment of interest will be due and payable on the fifth Business Day of the first month that is more than 30 days after the Effective Date and on the fifth Business Day of each respective month thereafter. Any perfected liens or security interests securing the Allowed

Secured Claim of John Monlezun will be preserved and continued. John Monlezun shall, upon payment and satisfaction of the Allowed Secured Claim of John Monlezun, execute releases of any remaining encumbrances upon its Collateral in a form satisfactory to the Reorganized Debtor and shall deliver same to the Reorganized Debtor or its designee. Subject to Section 6.4 of this Plan, nothing herein shall prohibit the Reorganized Debtor from refinancing or otherwise disposing of the 1010 Common Property at any time, provided that the remaining unpaid portion of the Allowed Secured Claim of John Monlezun shall be paid in full at such time.

Class 6 is impaired under the Plan.

6.7. Class 7; Convenience Class of Unsecured Claims Less than $2,500.00. Class 7 Claims are comprised of: (i) all Allowed Unsecured Claims that are less than or equal to $2,500.00; and (ii) all Allowed Unsecured Claims held by any Unsecured Creditor electing to have such Claim treated as a Class 7 Claim by waiving the portion of such Claim exceeding the sum of $2,500.00. Class 7 Claims shall be paid 100% of the Allowed amount without interest by the fifth Business Day of the first month that is more than 30 days after the Effective Date through funds to be contributed by TCI.

Class 7 Claims are impaired by the Plan.

6.8. Class 8; Allowed General Unsecured Claims. Except to the extent that a holder of an Allowed Unsecured Claim agrees to different treatment, Class 7 Claims shall be paid 100% of the Allowed amount without interest in twelve equal monthly payments, the first payment of which will be due and payable on the fifth Business Day of the first month that is more than 30 days after the Effective Date and on the fifth Business Day of each respective month thereafter.

Class 8 Claims are impaired by the Plan.

6.9. Class 9; General Unsecured Claims of TCI and Continental Common Lease Inc. Class 9 Claims will receive, subject to Section 6.4 of this Plan, pro-rata distributions from the Class 9 share of the proceeds from any sale of Property after payment of all Secured Claims holding a Lien in such Property as provided in Article IX. Class 9 Claims may or may not receive distributions under the Plan. Any and all Claims of TCI and Continental Common Lease Inc., of all type and character, shall be subordinate to the Claims of PNC in all respects, and no Distributions shall be made to TCI or Continental Common Lease Inc. until the Claims of PNC are paid in full in all respects.

Class 9 Claims are impaired by the Plan.

6.10. Class 10; Interests. The Class 10 Allowed Interest of the Equity Security Holder shall be cancelled and terminated on the Effective Date.

Class 10 Interests are impaired by the Plan.

# ARTICLE VII
## Acceptance or Rejection of this Plan

7.1.    <u>Classes Entitled to Vote</u>.  Each impaired Class of Claims that will receive or retain property or any interest in property under this Plan shall be entitled to vote to accept or reject this Plan as provided in the Disclosure Statement Order or any other Order.

7.2.    <u>Acceptance by Impaired Classes of Claims</u>.  An impaired Class of Claims shall have accepted this Plan if (a) the holders (other than any holder designated under Bankruptcy Code § 1126(e)) of at least two-thirds in dollar amount of the Allowed Claims actually voting in such Class have voted to accept this Plan and (ii) the holders (other than any holder designated under Bankruptcy Code § 1126(e)) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept this Plan.

7.3.    <u>Cramdown</u>.  If each impaired Class of Claims does not accept this Plan, the Plan Proponents request Confirmation of this Plan under Bankruptcy Code § 1129(b).  The Plan Proponents reserve the right to modify this Plan to the extent, if any, that Confirmation pursuant to Bankruptcy Code § 1129(b) requires modification or for any other reason in their discretion, but no such modification may adversely affect PNC (except with PNC's consent).

# ARTICLE VIII
## Sales of Property and Distribution of Proceeds upon Sale or Refinancing of Property

The Reorganized Debtor will seek to market and sell each of the Properties under the direction of a third party real estate broker, and, subject to Section 6.4 of this Plan, nothing herein shall prohibit the Debtor or the Reorganized Debtor from refinancing, selling, or otherwise disposing of any of the Properties at any time, provided that the remaining unpaid portion of any Allowed Secured Claim for which such Property being sold, refinanced, or otherwise disposed of serves as Collateral shall be paid in full at such time and all obligations under this Plan and the Plan Documents of the Debtor, the Reorganized Debtor, and TCI are satisfied in full.

In the event of a sale or refinancing, receipt of insurance loss proceeds or payments, any award or other payment made by any governmental unit or authority in conjunction with the exercise or any right of eminent domain or condemnation, any payments made on account of any easements or access rights granted by the Debtor or the Reorganized Debtor (as applicable), subject to Section 6.4 of this Plan, such proceeds shall first be used to pay in full any Allowed Secured Claim for which such Property serves as Collateral, including the Allowed Secured Claims of PNC and any Taxing Authority holding a Lien in such Property.  Upon the full satisfaction of any Allowed Secured Claims holding a Lien in such Property, any remaining proceeds shall be distributed equally among Classes 1 through 9, subject to the subordination of the Claims of TCI and Continental Common Lease Inc. to those of PNC, and provided that no payment shall be made to TCI or Continental Common Lease Inc. until the Claims of PNC are paid in full in all respects, but with respect to each such Class, only to the extent that Claims within such Class remain unsatisfied at such time.

# ARTICLE IX
## Means of Implementation

9.1.  <u>Conditions Precedent to the Effective Date</u>.  Each of the following events shall occur on or before the Effective Date; <u>provided</u>, <u>however</u>, the Plan Proponents may waive in writing any of the following event, in each Plan Proponent's sole and absolute discretion, whereupon the Effective Date shall occur without further action by any Person:

 a. the Confirmation Order, in a form and substance reasonably acceptable to each of the Plan Proponents, shall have been entered by the Bankruptcy Court and shall not be subject to a stay and shall include one or more findings that (i) this Plan is confirmed with respect to the Debtor, (ii) the Debtor has acted in good faith and in compliance with the applicable provisions of the Bankruptcy Code as set forth in Bankruptcy Code § 1125(e), and (iii) the Debtor is authorized to take all actions and consummate all transactions contemplated under this Plan;

 b. the Bankruptcy Court shall have approved the termination and extinguishment of the equity Interests in the Debtor and the equity interests of the Reorganized Debtor have been issued to TCI;

 c. the Bankruptcy Court shall have determined that the Reorganized Debtor is or will be duly authorized to take the actions contemplated in the Plan and the Plan Documents, which approval and authorization may be set forth in the Confirmation Order;

 d. all documents, instruments, and agreements provided under, or necessary to implement, this Plan, including, but not limited to, the Plan Documents, shall have been executed and delivered by the applicable parties;

 e. the Plan Documents, each in form and substance reasonably acceptable to the Plan Proponents and the parties thereto, shall have been duly and validly executed and delivered by the parties thereto and all conditions to their effectiveness shall have been satisfied or waived;

 f. the Bankruptcy Court shall have found that the aggregate allowance of all Administrative Claims will be less than or equal to $125,000 on or before the hearing on the Disclosure Statement;

 g. no Material Adverse Change (as defined below) shall have occurred.  As used herein, "<u>Material Adverse Change</u>" shall mean a change in the asset value, business operations or financial condition of the Debtor which materially and adversely diminishes the value of the assets owned by the Debtor.  Any dispute regarding whether a Material Adverse Change has occurred shall be determined by the Bankruptcy Court;

 h. PNC shall have received estoppel letters obtained by the Debtor that are acceptable to PNC in PNC's sole and absolute discretion as to any lease property;

i. the Confirmation Order shall contain a finding acceptable to PNC in its sole and absolute discretion that (1) both before and immediately after the consummation of the Collateral Transfer, the Debtor had sufficient assets such that the fair value of the assets of the Debtor, at a fair valuation, exceeded its debts and liabilities, subordinated, contingent or otherwise; (2) the transfer of notes from the Debtor to TCI and Continental Common Lease Inc. in the amounts thereof and the assumption of the PNC Loan by the Debtor constituted reasonably equivalent value and fair consideration for the Collateral Transfer; and (3) the Collateral Transfer was made on reasonable business terms and was not made with actual intent to hinder, delay or defraud any entity;

j. the Confirmation Order shall contain a finding acceptable to PNC in its sole and absolute discretion that (a) TCI, Continental Common Lease Inc. and the Debtor intended and contemplated that the Continental Common Lease Note be issued to Continental Common Lease Inc. in exchange for the Collateral Transfer at the time of the Collateral Transfer, (b) the rescission of the Continental Common Lease Note and reissuance of a corrected note to Continental Common Lease Inc. to be effectuated by the Plan and the Plan Documents is necessary to correct a scrivener's error at the time of the transaction, and (c) the rescission of the Continental Common Lease Note and reissuance of the corrected note is valid, binding, and enforceable as of the date of the Collateral Transfer; and

k. the Bankruptcy Court shall have approved the Plan Documents.

9.2. <u>Securities Laws</u>. It is an integral and essential element of this Plan that the offer and issuance of equity interests of the Reorganized Debtor and the treatment of Creditors pursuant to this Plan, to the extent such interests and treatment constitute securities under the 1933 Act, shall be exempt from registration under the 1933 Act and any state or local law, pursuant to Bankruptcy Code § 1145 or other applicable exemptions, without limitation. The Confirmation Order shall include a finding and conclusion, binding upon all parties to the Case, the Debtor, the Reorganized Debtor, the U.S. Securities and Exchange Commission and all other federal, state and local regulatory enforcement agencies, to the effect that such offer and issuance, to the extent such equity interests of the Reorganized Debtor and treatment of Creditors constitute securities under the 1933 Act, fall within the exemption from registration under the 1933 Act and any state or local law pursuant to Bankruptcy Code § 1145.

9.3. <u>Funding of Plan</u>. Subject to Section 6.4 of the Plan, the Reorganized Debtor will use Net Cash Flow, funds received from TCI, funds on deposit in the Debtor's various debtor-in-possession bank accounts, including, but not limited to, the tax escrow account and the $96,000.00 deposited by the Debtor into a special utility escrow account for the benefit of Entergy New Orleans, Inc., who has received a surety bond executed by TCI as adequate assurance of payment and in such funds' stead, collections of accounts receivable owed as of the Confirmation Date, funding from TCI, its designee, or any other entity, proceeds from sales or refinancing of the Properties, and any additional monies obtained by the Debtor to fund the Distributions required under the Plan to Classes 1, 2, 3, 5, 6, 7, 8, and 9.

Distributions to Class 4 Claimants shall be treated in accordance with Section 6.4 of this Plan and will be funded by Gross Revenue, funds received from TCI (either as capital contributions or in accordance with the obligations of TCI under the Plan Documents), funds on deposit in the Debtor's various debtor-in-possession bank accounts, including, but not limited to, the tax escrow account and the $96,000.00 deposited by the Debtor into a special utility escrow account for the benefit of Entergy New Orleans, Inc., collections of accounts receivable owed as of the Confirmation Date, funding from TCI, its designee, or any other entity, insurance loss proceeds or payments, any award or other payment made by any governmental unit or authority in conjunction with the exercise or any right of eminent domain or condemnation, any proceeds from any sale, refinancing, exchange, or other disposition of the Properties, any payments made on account of any easements or access rights granted by the Debtor which are not material to the operation of the Property, and any additional monies obtained by the Debtor.

9.4. <u>Distribution Agent</u>. The Distribution Agent shall place all funds provided by TCI or its designee for making Plan payments into the Distribution Account and is authorized, provided there are sufficient funds available in said account, to make Distributions from the Distribution Account. The Distribution Agent will serve until all Distributions required under the Plan have been made, whereupon the Distribution Account will be closed, and no further actions are required to consummate the Plan. All documents, writings, authorizations or matters requiring the consent of, execution by, or signature of the Debtor or Reorganized Debtor (as applicable) may be consented to, executed by, or signed by the Distribution Agent, whose signature, execution, or consent is hereby deemed authorized, enforceable and binding without further order of the Court. A certified copy of the Confirmation Order may be filed in any deed record, government or public record keeping place as authentication of the signature and authority of the Distribution Agent to consent to, execute, or sign any writing or document of the Debtor and Reorganized Debtor (as applicable) herein.

9.5. <u>Vesting of Assets</u>. As of the Effective Date, all Assets shall be transferred to, and vested in, the Reorganized Debtor free and clear of all Liens and Claims and all rights, title and interests, except as expressly set forth in this Plan and the Plan Documents.

9.6. <u>Amendments to Corporate Documents</u>. As of the Effective Date, the organizational corporate documents of the Debtor and Reorganized Debtor may be amended and revised to the extent necessary to reflect the transactions contemplated by this Plan, including the cancellation of the equity security interests of the Equity Security Holder and the issuance of 100% of the capital stock of the Reorganized Debtor to TCI or its designee in exchange for the contributions to be made by TCI or its designee herein.

9.7. <u>Assumption of Allowed Claims</u>. The Reorganized Debtor hereby assumes the liability for and obligation to perform and make all distributions or payments on account of all Allowed Claims in the manner provided in this Plan.

9.8. <u>Attorneys' Fees and Costs</u>. To the extent any holder of a Secured Claim, other than PNC, asserts a right to attorneys' fees and costs pursuant to section 506(b) of the Bankruptcy Code, unless otherwise agreed between the Debtor or Reorganized Debtor and such Secured Creditor, the allowance of such fees and expenses shall be handled as set forth in this paragraph. Within twenty (20) days after the Effective Date, the Secured Creditor shall file an

application with the Bankruptcy Court for allowance of such fees and expenses. Such application will follow the same rules and guidelines as a fee application for a Professional seeking compensation from the Debtor, including the U.S. Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses. Within twenty (20) days after such application is filed, the Reorganized Debtor may file any objections thereto, and the Secured Creditor shall file any response within twelve (12) days thereafter. If the Secured Creditor and the Reorganized Debtor are unable to reach agreement, the matter shall then be submitted to the Bankruptcy Court for determination on no less than twenty (20) days notice of the hearing.

9.9.    Post-Petition Taxes and Insurance. Funds for payment of post-petition property taxes and insurance will be deposited each month as part of each respective Property's monthly operating expenses into a real estate tax escrow account to be held by PNC and will be paid when such taxes and/or insurance become due and payable under the laws of the applicable taxing jurisdiction.

9.10.    Disputed Claims or Interests. Notwithstanding any other provision of this Plan, any Claim or Interest which is disputed, unliquidated, or contingent as of any date on which a Distribution is to be made shall not participate in or otherwise receive any such Distribution until a Final Order has been entered allowing such Claim or Interest.

9.11.    Rescission of Continental Common Lease Note. The Plan Documents shall include, and this Plan shall ratify and effectuate in connection with the Plan Documents, (a) a rescission of the Continental Common Lease Note and (b) the issuance of a corrected note payable to Continental Common Lease Inc. effective as of the date of the Collateral Transfer.

## ARTICLE X
## Retention, Enforcement, Settlement or Adjustment of Claims

10.1.    Time for Filing Claims. All claimants (except for Creditors whose Claims are included in Non-Class 1 or whose Claims were scheduled as undisputed, liquidated, and noncontingent in the Schedules) shall be required to file a Proof of Claim prior to the Bar Date in order to participate in any Distribution made under this Plan or to have such Claim allowed by the Bankruptcy Court. Any Claim asserted pursuant to Section 507(a)(1), other than Claims made pursuant to Section 330 of the Bankruptcy Code, shall be filed within ten (10) days prior to the first date scheduled by the Bankruptcy Court for commencement of the hearing to be held on the Confirmation of the Plan.

10.2.    Objection Deadline. All objections to Claims shall be served and filed by the Objection Deadline, if one is set by the Bankruptcy Court, although nothing contained herein shall require the fixing of an Objection Deadline; provided, however, the Objection Deadline shall not apply to Claims which are not reflected in the claims register. If an Objection Deadline is fixed, it may be extended one or more times by the Bankruptcy Court pursuant to a motion filed on or before the then applicable Objection Deadline. Any Contested Claims may be litigated to Final Order.

10.3.  Distributions on Account of Contested Claims.  No distribution shall be made on account of a Contested Claim until Allowed.  Until such time as a contingent Claim becomes fixed and absolute by a Final Order allowing such Claim, such Claim shall be treated as a Contested Claim for purposes of estimates, allocations, and distributions under the Plan.  Any contingent right to contribution or reimbursement shall continue to be subject to section 502(e) of the Bankruptcy Code.

10.4.  No Waiver of Right to Object.  Except as expressly provided in this Plan, nothing contained in the Disclosure Statement, this Plan, or the Confirmation Order shall waive, relinquish, release or impair the Reorganized Debtor's right to object to any Claim that has not yet been Allowed.

10.5.  Rights Under Section 505.  All Tax Claims shall remain subject to section 505 of the Bankruptcy Code.  The Reorganized Debtor shall retain the right to a determination of the amount or legality of any tax pursuant to section 505 of the Bankruptcy Code as to any Tax Claim.  The Reorganized Debtor may seek relief pursuant to section 505 of the Bankruptcy Code as a part of, and in conjunction with, any objection to any Tax Claim.

10.6.  Allowance of Contested Claims.  This section shall apply to all Contested Claims.  Nothing contained in the Plan, Disclosure Statement, or Confirmation Order shall change, waive or alter any requirement under applicable law that the holder of a Contested Claim must file a timely proof of Claim, and the Claim of any such Contested Creditor who is required to file a proof of Claim and fails to do so shall be discharged and shall receive no distribution through the Plan.  The holder of any Contested Claim shall not have a right to trial by jury before the Bankruptcy Court in respect of any such Claim.  Exclusive venue for any Contested Proceeding shall be in the Bankruptcy Court or a court of competent jurisdiction located in Dallas County, Texas.  Contested Claims shall each be determined separately, except as otherwise ordered by the Bankruptcy Court.  Texas Rule of Civil Procedure 42 and Federal Rule of Civil Procedure 23 shall not apply to any Contested Proceeding.  The Reorganized Debtor shall retain all rights of removal to federal court as to any Contested Proceeding.

10.7.  Allowance of Certain Claims.  All Contested Claims shall be liquidated and determined as follows:

(a)  Application of Adversary Proceeding Rules.  Unless otherwise ordered by the Bankruptcy Court or provided by the Bankruptcy Rules, any objection to a Contested Claim shall be treated as a contested proceeding subject to Bankruptcy Rule 9014 of the Rules of Bankruptcy Procedure.  However, any party may move the Bankruptcy Court to apply the rules applicable to adversary proceedings to any Claim Objection.  The Reorganized Debtor, however, may at its election, make and pursue any Objection to a Claim in the form of an adversary proceeding.

(b)  Scheduling Order.  Unless otherwise ordered by the Bankruptcy Court, or if the Objection is pursued as an adversary proceeding, a scheduling order shall be entered as to each Objection to a Claim.  The Debtor shall tender a proposed scheduling order with each Objection and include a request for a scheduling conference for the entry of a scheduling order.  The scheduling order may include (i) discovery cut-off, (ii) deadlines to amend pleadings, (iii)

deadlines for designation of and objections to experts, (iv) deadlines to exchange exhibit and witness lists and for objections to the same, and (v) such other matters as may be appropriate.

10.8. <u>Substantial Consummation</u>. All distributions of any kind made to any of the Creditors after substantial consummation and any and all other actions taken under this Plan after substantial consummation shall not be subject to relief, reversal, or modification by any court unless the implementation of the Confirmation Order is stayed by an order granted under Bankruptcy Rule 8005.

10.9. <u>Retention of Claims and Causes of Action</u>. Except to the extent explicitly released in Article XIII of this Plan, all causes of action, rights of setoff and other legal and equitable defenses of the Debtor and the estate are preserved for the benefit of the Reorganized Debtor. No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement as to any cause of action against them as an indication that the Reorganized Debtor will not pursue a cause of action against them. Such causes of action include, but are not limited to, (i) all rights pursuant to Sections 502, 510, 544, 545, and 546 of the Code, all preference claims under Section 547 of the Code, all fraudulent transfer claims pursuant to Section 548 of the Code, all claims relating to post-petition transactions under Section 549 of the Code, and all claims recoverable under Section 550, (ii) all claims and causes of action that the Debtor may hold against a current or previous tenant at the 1010 Common Property with respect to an office lease, (iii) all rights of offset or recoupment and all counterclaims against any Claimant, and (iv) those causes of action listed in the Disclosure Statement. Assertion of counterclaims by the Reorganized Debtor against Claimants shall constitute a "core" proceeding.

## ARTICLE XI
## <u>Retention of Jurisdiction</u>

Until this Chapter 11 case is closed, the Court shall retain jurisdiction of all matters arising under, or related to, these proceedings, including, but not limited to:

(a)     insuring that the purpose and intent of the Plan are carried out;

(b)     consideration of any modification of the Plan under Section 1127 of the Code or modification of the Plan after substantial consummation, as defined in Section 1101(2) of the Code;

(c)     hearing and determining all claims, controversies, suits, and disputes against Debtor;

(d)     hearing, determining, and enforcing all claims or causes of action which may exist on behalf of the Debtor or its estate;

(e)     hearing and determining all controversies, suits, and disputes that may arise in connection with the interpretation of the Plan;

(f)     hearing and determining all objections to claims, controversies, suits, and disputes that may be pending as of or initiated after the Effective Date;

(g)     enforcing and interpreting, by injunction or otherwise, the terms and conditions of the Plan;

(h)     entering any Order, including injunctions, necessary to enforce the rights, titles, interests, and powers of the Debtor and to impose such limitations, restrictions, terms, and conditions as may be necessary or helpful to carry out the purposes and intent of the Plan;

(i)     entering an Order concluding and terminating this Chapter 11 case;

(j)     correcting or curing any defect, omission, inconsistency, conflict, or error in the Plan or Confirmation Order as may be necessary or helpful to carry out the purposes and intent of the Plan;

(k)     considering and acting on any matters consistent with the Plan as may be provided in the Confirmation Order; and

(l)     considering the rejection of Executory Contracts that have not been rejected prior to Confirmation and adjudicating any claims for damages with respect to such rejection.

(m)     Notwithstanding anything herein to the contrary, the Bankruptcy Court shall not retain jurisdiction over the obligations of the Reorganized Debtor and TCI to PNC under the Plan Documents except to the extent expressly consented to in writing by PNC in its sole and absolute discretion.

## ARTICLE XII
## Executory Contracts and Treatment of Tenant Security Deposits

12.1.     _Motion to Assume_.  The Plan shall constitute a motion to assume the executory contracts and unexpired leases listed in **Exhibit A** attached hereto and the vesting of such contracts in the Reorganized Debtor as of the Effective Date.   All executory contracts and unexpired leases not listed on **Exhibit A** attached hereto shall be rejected on the Effective Date. Except as otherwise set by Order of the Bankruptcy Court, any objection to the assumption and vesting of, or the proposed cure amount under, the executory contracts and unexpired leases listed in **Exhibit A** attached hereto must be made as an objection to confirmation of this Plan.  If no objection to the assumption and vesting of, or the proposed cure amount under, any particular executory contract and unexpired lease listed on **Exhibit A** attached hereto and timely served, an Order (which may be Confirmation Order) that approves the assumption and vesting of, and the proposed cure amount under, each respective executory contract and unexpired lease listed on **Exhibit A** attached hereto may be entered by the Bankruptcy Court.  If any such objections are filed and timely served, a hearing with respect to the assumption and vesting or cure of any of executory contract and unexpired lease listed on **Exhibit A** attached hereto, and the objections thereto, shall be scheduled by the Bankruptcy Court, which hearing may, but is not required to, coincide with the Confirmation  Hearing.

12.2.     _Notice of Assumption_.  On or as soon as reasonably practicable after the entry of the order approving the Disclosure Statement, the Debtor shall serve a notice to parties to the executory contracts and unexpired leases listed on **Exhibit A** attached hereto whose agreements may be assumed by the Debtor and vested in the Reorganized Debtor under this Plan.  That

notice shall include the proposed cure payment to be paid to the non-Debtor parties or any other third parties necessary to cure all defaults and arrearages under the executory contracts and unexpired leases listed on **Exhibit A** attached hereto and the means by which such parties may receive information regarding the providing of adequate assurance.

12.3. <u>Effect of Assumption</u>. If the Bankruptcy Court approves the assumption and vesting of one or more executory contracts and unexpired leases listed on **Exhibit A** attached hereto, each executory contract and unexpired lease listed on **Exhibit A** attached hereto shall be deemed an assumed contract, and such contracts shall be assumed by the Debtor effective as of the Effective Date, and they shall vest in the Reorganized Debtor on the Effective Date. In the event of a dispute concerning the assumption of an executory contract and unexpired lease listed on **Exhibit A** attached hereto, the dispute shall be resolved by the Bankruptcy Court. To the extent that a counterparty to an executory contract or unexpired lease has Claims that are not set forth on **Exhibit A** that relate to the executory contracts and unexpired leases set forth on **Exhibit A**, as of the Effective Date such counterparty shall be barred from asserting such Claims.

12.4. <u>Cure Claims</u>. Any Cure Claim owed under any assumed executory contract or lease will be paid by the Reorganized Debtor in the amount set forth in **Exhibit A** through twelve equal monthly payments, the first of which will be due and payable on the fifth Business Day of the first month that is more than 30 days after the Effective Date and the remainder of which will be due on the fifth Business Day of each respective month thereafter.

12.5. <u>Security Deposits</u>. The Debtor or the Reorganized Debtor (as applicable) shall continue to hold any and all security deposits tendered to the Debtor by any tenant at the 1010 Common Property in a segregated escrow account and shall maintain such deposits in accordance with the terms of the respective office lease.

## ARTICLE XIII
## Effect of Confirmation

13.1. <u>Discharge</u>. Except to the extent provided in this Plan, the Plan Documents and the Confirmation Order, on the Effective Date, the Debtor, its estate, the Reorganized Debtor and their respective assets and properties are automatically and forever discharged and released from all Claims and vested free and clear of all Liens to the fullest extent permitted under Bankruptcy Code § 1141. Except as otherwise set forth in this Plan, the Plan Documents, or the Confirmation Order, the rights afforded under this Plan and the treatment of Claims and equity Interests under this Plan are in exchange for and in complete satisfaction, discharge, and release of, all Claims including any interest accrued on any Claims from the Petition Date against the Debtor, the estate and the Reorganized Debtor, and the termination and cancellation of all equity Interests. Except as set forth in this Plan, the Plan Documents, or the Confirmation Order, Confirmation shall (a) discharge the Debtor and the Reorganized Debtor from all Claims or other debts that arose before the Effective Date, and all debts of a kind specified in Bankruptcy Code §§ 502(g), (h), or (i), whether or not (i) a Proof of Claim based on such debt is Filed or deemed filed under Bankruptcy Code § 501, (ii) a Claim based on such debt is Allowed, or (iii) the holder of a Claim based on holders of such debt has accepted this Plan, and (b) terminate all equity Interests and other rights of equity Interests in the Debtor.

13.2.    Legal Binding Effect.  The provisions of this Plan shall bind all holders of Claims and equity Interests and their respective successors and assigns, whether or not they accept this Plan.  On and after the Effective Date, except as expressly provided in this Plan and the Plan Documents, all holders of Claims, Liens and equity Interests shall be precluded from asserting any Claim, cause of action or Liens against the Debtor, the estate, the Reorganized Debtor or their respective property and assets based on any act, omission, event, transaction or other activity of any kind that occurred or came into existence prior to the Effective Date.

13.3.    Moratorium, Injunction and Limitation of Recourse For Payment.  **EXCEPT AS OTHERWISE PROVIDED IN THIS PLAN, THE PLAN DOCUMENTS, OR BY SUBSEQUENT ORDER OF THE BANKRUPTCY COURT, UPON CONFIRMATION OF THIS PLAN (AND FROM AND AFTER THE EFFECTIVE DATE) ALL PERSONS WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS OR LIENS AGAINST, OR EQUITY INTERESTS IN, THE DEBTOR OR ITS PROPERTIES ARE PERMANENTLY ENJOINED FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST THE ESTATE, THE DEBTOR, AND THE REORGANIZED DEBTOR:  (A) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY ACTION OR OTHER PROCEEDING; (B) ENFORCING, ATTACHING, COLLECTING OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE OR ORDER; (C) CREATING, PERFECTING OR ENFORCING ANY LIEN OR ENCUMBRANCE; (D) ASSERTING A SETOFF, RIGHT OF SUBROGATION, NETTING OR RECOUPMENT; AND (E) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY ACTION THAT DOES NOT COMPLY WITH OR IS INCONSISTENT WITH THE PROVISIONS OF THIS PLAN AND THE PLAN DOCUMENTS; PROVIDED, HOWEVER, THAT NOTHING CONTAINED HEREIN OR IN THE CONFIRMATION ORDER SHALL ENJOIN OR PRECLUDE (A) SUCH PERSONS FROM EXERCISING THEIR RIGHTS PURSUANT TO AND CONSISTENT WITH THE TERMS OF THIS PLAN AND THE PLAN DOCUMENTS; AND (B) THE REORGANIZED DEBTOR IN ANY MANNER FROM ENFORCING OR EXERCISING ITS RIGHTS OR REMEDIES PURSUANT TO OR ARISING OUT OF THIS PLAN, THE CONFIRMATION ORDER, OR THE PLAN DOCUMENTS.  SUCH INJUNCTION SHALL EXTEND TO AND FOR THE BENEFIT OF ANY SUCCESSOR OR ASSIGNEE OF THE DEBTOR, THE REORGANIZED DEBTOR, AND THEIR RESPECTIVE PROPERTIES AND INTEREST IN PROPERTIES.  SUCH INJUNCTION SHALL NOT PRECLUDE ANY RIGHT OF AN ENTITY TO ASSERT A SEPARATE AND DIRECT CLAIM THAT IS NOT PROPERTY OF THE ESTATE AGAINST A PARTY THAT IS NOT THE DEBTOR OR THE REORGANIZED DEBTOR.  THE CONFIRMATION ORDER SHALL, AMONG OTHER THINGS, CONTAIN, DIRECT AND PROVIDE FOR THE FOREGOING INJUNCTION.**

13.4.    Term of Injunction or Stays.  **ANY INJUNCTION OR STAY ARISING UNDER OR ENTERED DURING THE BANKRUPTCY CASE UNDER BANKRUPTCY CODE §§ 105 AND 362 OR OTHERWISE THAT IS IN EXISTENCE ON THE CONFIRMATION DATE SHALL REMAIN IN FULL FORCE AND EFFECT UNTIL THE LATER OF THE EFFECTIVE DATE AND THE DATE INDICATED IN THE ORDER PROVIDING FOR SUCH INJUNCTION OR STAY.**

13.5.   <u>Release and Covenant Not to Sue.</u>  **NOTWITHSTANDING ANYTHING SET FORTH HEREIN TO THE CONTRARY, ON THE EFFECTIVE DATE, EACH OF THE RELEASING PARTIES SHALL BE DEEMED TO HAVE IRREVOCABLY RELEASED AND DISCHARGED PNC AND ALL MANAGERS, FORMER AND CURRENT OFFICERS, CURRENT AND FORMER DIRECTORS, AGENTS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, FINANCIAL ADVISORS, AND PROFESSIONALS, IF ANY, EMPLOYED BY PNC (BUT SOLELY IN THE CAPACITIES SO EMPLOYED) OF AND FROM ANY CLAIM, CAUSE OF ACTION, RIGHT TO PAYMENT, OR LIABILITY, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, ASSERTED OR NOT ASSERTED, SCHEDULED OR NOT SCHEDULED, NOW EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY OR OTHERWISE, AND WHETHER ARISING UNDER THE BANKRUPTCY CODE OR OTHER APPLICABLE LAW INCLUDING, WITHOUT LIMITATION, CAUSES OF ACTION UNDER CHAPTER 5 OF THE BANKRUPTCY CODE AND CAUSES OF ACTION ARISING UNDER, OR IN ANY WAY RELATED TO, THE PNC LOAN, ARISING FROM OR RELATED TO ACTS OR OMISSIONS OCCURRING ON OR BEFORE THE EFFECTIVE DATE, AND THE RELEASING PARTIES COVENANT NOT TO SUE PNC WITH RESPECT TO THE CLAIMS AND CAUSES OF ACTION RELEASED HEREIN (ALL OF THE FOREGOING BEING HEREIN CALLED THE "<u>RELEASED CLAIMS</u>"); <u>PROVIDED</u>, <u>HOWEVER</u>, THAT THE RELEASED CLAIMS SHALL NOT INCLUDE CLAIMS OR CAUSES OF ACTION OF TCI AGAINST PNC (IF ANY) THAT ARE NOT RELATED TO THE PNC LOAN, THE PROPERTIES, OR TRANSACTIONS OR MATTERS RELATING THERETO.  EACH OF THE RELEASING PARTIES REPRESENTS AND WARRANTS THAT EACH SUCH RELEASING PARTY HAS NOT TRANSFERRED, PLEDGED OR OTHERWISE ASSIGNED TO ANY OTHER PERSON OR ENTITY ALL OR ANY PORTION OF ANY CLAIM RELEASED UNDER THIS SECTION OR ANY RIGHTS OR ENTITLEMENTS WITH RESPECT THERETO AND THE EFFECTUATION OF THIS RELEASE DOES NOT VIOLATE OR CONFLICT WITH THE TERMS OF ANY CONTRACT TO WHICH SUCH RELEASING PARTY IS A PARTY OR BY WHICH SUCH RELEASING PARTY OTHERWISE IS BOUND.  WITHOUT LIMITING THE FOREGOING, THE CONFIRMATION ORDER SHALL INCLUDE A FINDING AND ORDER PROVIDING THAT ANY CAUSES OF ACTIONS AGAINST PNC ARISING UNDER, OR IN ANY WAY RELATED TO, THE PNC LOAN ARE PROPERTY OF THE DEBTOR'S BANKRUPTCY ESTATE, AND BY THE TERMS OF THE RELEASE CONTAINED WITHIN THIS PARAGRAPH SUCH CAUSES OF ACTION, IF ANY, ARE BARRED FROM BEING ASSERTED IN ANY MANNER BY THE DEBTOR, THE REORGANIZED DEBTOR, THE HOLDERS OF CLAIMS AGAINST THE DEBTOR, OR THE CURRENT OR FORMER HOLDERS OF EQUITY INTERESTS IN THE DEBTOR.  FOR THE AVOIDANCE OF DOUBT, CAUSES OF ACTION AGAINST PNC ARISING UNDER, OR IN ANY WAY RELATED TO, THE PNC LOAN, IF ANY, ARE BEING RELEASED BY THE RELEASING PARTIES PURSUANT TO THIS PARAGRAPH AND SUCH CAUSES OF ACTION ARE NOT RETAINED BY, VESTED IN, OR CONVEYED TO, THE REORGANIZED DEBTOR OR ANY PARTY PURSUANT TO THIS PLAN OR ANY PLAN DOCUMENT.  THE RELEASES IN THIS SECTION ARE SPECIFICALLY INTENDED TO OPERATE AND BE APPLICABLE**

**EVEN IF IT IS ALLEGED, CHARGED OR PROVEN THAT ALL OR SOME OF THE CLAIMS OR DAMAGES RELEASED WERE SOLELY AND COMPLETELY CAUSED BY ANY ACTS OR OMISSIONS, WHETHER NEGLIGENT OR GROSSLY NEGLIGENT OF OR BY PNC.**

13.6.    <u>PNC Release and Covenant Not to Sue</u>.  **NOTWITHSTANDING ANYTHING SET FORTH HEREIN TO THE CONTRARY, ON THE EFFECTIVE DATE, PNC SHALL BE DEEMED TO HAVE IRREVOCABLY RELEASED AND DISCHARGED THE RELEASING PARTIES AND ALL MANAGERS, FORMER AND CURRENT OFFICERS, CURRENT AND FORMER DIRECTORS, AGENTS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, FINANCIAL ADVISORS, AND PROFESSIONALS, IF ANY, EMPLOYED BY ANY OF THE RELEASING PARTIES (BUT SOLELY IN THE CAPACITIES SO EMPLOYED) OF AND FROM ANY CLAIM, RIGHT TO PAYMENT, LIABILITY, OR CAUSE OF ACTION, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, ASSERTED OR NOT ASSERTED, SCHEDULED OR NOT SCHEDULED, NOW EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY OR OTHERWISE, ARISING FROM OR RELATED TO ACTS OR OMISSIONS OCCURRING ON OR BEFORE THE EFFECTIVE DATE WITH RESPECT TO CAUSES OF ACTION ARISING UNDER, OR IN ANY WAY RELATED TO, THE PNC LOAN (OTHER THAN THE RIGHTS OF PNC TO ENFORCE THIS PLAN AND THE PLAN DOCUMENTS) AND PNC COVENANTS NOT TO SUE ANY OF THE RELEASING PARTIES IDENTIFIED IN THIS SECTION WITH RESPECT TO THE CLAIMS AND CAUSES OF ACTION RELEASED HEREIN (ALL OF THE FOREGOING BEING HEREIN CALLED THE <u>"PNC RELEASED CLAIMS"</u>); <u>PROVIDED</u>, <u>HOWEVER</u>, THAT NO RELEASING PARTIES SHALL BE RELEASED AND DISCHARGED FROM (AND THE PNC RELEASED CLAIMS SHALL NOT INCLUDE) OBLIGATIONS UNDER THIS PLAN, THE CONFIRMATION ORDER, THE PLAN DOCUMENTS, AND CLAIMS, RIGHTS TO PAYMENT, LIABILITIES, AND CAUSES OF ACTION THAT DO NOT RELATE TO THE PNC LOAN, THE PROPERTIES OR TRANSACTIONS OR MATTERS RELATING THERETO.  PNC REPRESENTS AND WARRANTS THAT PNC HAS NOT TRANSFERRED, PLEDGED OR OTHERWISE ASSIGNED TO ANY OTHER PERSON OR ENTITY ALL OR ANY PORTION OF ANY CLAIM RELEASED UNDER THIS SECTION OR ANY RIGHTS OR ENTITLEMENTS WITH RESPECT THERETO AND THE EFFECTUATION OF THIS RELEASE DOES NOT VIOLATE OR CONFLICT WITH THE TERMS OF ANY CONTRACT TO WHICH PNC IS A PARTY OR BY WHICH PNC OTHERWISE IS BOUND.  THE RELEASE IN THIS SECTION IS SPECIFICALLY INTENDED TO OPERATE AND BE APPLICABLE EVEN IF IT IS ALLEGED, CHARGED OR PROVEN THAT ALL OR SOME OF THE PNC RELEASED CLAIMS WERE SOLELY AND COMPLETELY CAUSED BY ANY ACTS OR OMISSIONS, WHETHER NEGLIGENT OR GROSSLY NEGLIGENT OF OR BY ONE OR MORE OF THE RELEASING PARTIES.**

13.7.    <u>Insurance</u>.  Confirmation and consummation of this Plan shall have no effect on insurance policies of the Debtor or its current or former directors and officers in which the Debtor or its current or former directors and officers are or were an insured party.  Each insurance company is prohibited from, and the Confirmation Order shall include an injunction

against, denying, refusing, altering or delaying coverage for the Debtor (or their current or former directors and officers) or the Reorganized Debtor on any basis regarding or related to any of the Debtor's Bankruptcy Cases, this Plan or any provision within this Plan.

## ARTICLE XIV
## Substantial Consummation

For purposes of this Plan, substantial consummation shall occur upon the Effective Date.

## ARTICLE XV
## Miscellaneous Provisions

15.1.  Corporate Allocations.  Any and all adjustments and reallocations among the equity security holders of the Debtor resulting from the Confirmation of this Plan shall be deemed effective as of January 1, 2011, for Corporation and tax purposes.

15.2.  No Double Recovery.  No Creditor or other party in interest shall be entitled to a double recovery on account of any Allowed Claim or interest.

15.3.  Valuation Hearing.  In the event that the Debtor and any Secured Creditor, other than PNC, are unable to reach an agreement as to the value of its Collateral, the Debtor shall seek a valuation hearing in respect to the Collateral and, following such hearing, reserves the right to take such action as it deems advisable, including amending or modifying this Plan, to provide for the refinancing, sale or disposition of the Collateral free and clear of liens, claims, and encumbrances for a purchase price equal to the value of the Collateral, as determined by the Bankruptcy Court at such hearing.

15.4.  Compliance With Tax Requirements.  The Debtor or the Reorganized Debtor (as applicable) shall comply with all withholding and reporting requirements imposed by federal, state, and local taxing authorities and any distributions hereunder shall be subject to such requirements, if any.

15.5.  Revocation, Withdrawal or Non-Consummation.  The Plan Proponents reserve the right to revoke or withdraw this Plan prior to the Confirmation Date and to file any amended or subsequent plans.  If confirmation of the Plan does not occur, or if the Effective Date does not occur on or prior to 120 days after the Confirmation Date, then (a) this Plan shall be null and void in all respects, (b) settlements or compromises embodied in this Plan (including the fixing or limiting to an amount certain of any Claim or Class of Claims), assumptions or rejections of executory contracts or unexpired leases affected by this Plan, and any documents or agreements executed pursuant to this Plan, shall be deemed null and void, and (c) nothing contained in this Plan or the Disclosure Statement shall (i) constitute a waiver or release of any Claims by or against, or any equity Interests in, the Debtor or any other Person, (ii) prejudice in any manner the rights of the Debtor or any other Person, or (iii) constitute an admission of any sort by the Debtor or any other Person.

15.6.  Severability of Plan Provisions.  If, prior to confirmation of the Plan, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Plan Proponents, shall have the power to alter and

interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may be altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

15.7. <u>Exemption from Transfer Taxes and Recording Fees</u>. In accordance with Bankruptcy Code § 1146(a), none of the issuance, transfer or exchange of any securities under this Plan, the release of any mortgage, deed of trust or other Lien, the making, assignment, filing or recording of any lease or sublease, the vesting or transfer of title to or ownership of any of the Debtor's interests in any property, or the making or delivery of any deed, bill of sale or other instrument of transfer under, in furtherance of, or in connection with this Plan, including the releases of Liens contemplated under this Plan, shall be subject to any document recording tax, stamp tax, conveyance fee, sales or use tax, bulk sale tax, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee or other similar tax or governmental assessment in the United States. The Confirmation Order shall direct the appropriate federal, state and/or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

15.8. <u>Interest Accrual</u>. Except to the extent provided in the Plan and the Plan Documents, and with respect to and only to the extent permitted by bankruptcy law and applicable law as to Secured Claims, no post-petition interest shall accrue on any Claim or scheduled liability (including, but not limited to, Allowed Administrative Claims).

15.9. <u>Rules of Interpretation; Computation of Time</u>. For purposes of this Plan, (a) any reference in this Plan to a contract, instrument, release, indenture, or other agreement or document as being in a particular form or containing particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, (b) any reference in this Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented, (c) unless otherwise specified, all references in this Plan to Sections, Articles, and Exhibits, if any, are references to Sections, Articles, and Exhibits of or to this Plan, (d) the words "herein" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan, (e) the words "include", "includes" or "including" shall be deemed to be followed by the words "without limitation", whether or not they are in fact followed by those words or words of like import, (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan, and (g) the rules of construction set forth in Bankruptcy Code § 102 and in the Bankruptcy Rules shall apply. In computing any period of time prescribed or allowed by this Plan, unless otherwise specifically designated herein, the provisions of Bankruptcy Rule 9006(a) shall apply.

All references to immediately available funds, dollar amounts, or cash payments contained in this Plan shall mean United States dollars.

15.10. <u>Reservation of Rights</u>.  This Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order.  Prior to the Effective Date, none of the filing of this Plan, any statement or provision contained herein or the taking of any action by PNC with respect to this Plan shall be or shall be deemed to be an admission or waiver of any rights of PNC of any kind, including with respect to the holders of Claims or equity Interests or as to any treatment or classification of any contract or lease.

15.11. <u>Further Assurances</u>.  The Debtor, the Reorganized Debtor, TCI, PNC, and all holders of Claims receiving Payments or Distributions hereunder and all other parties in interest may and shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

15.12. <u>Successors and Assigns</u>.  This Plan and all rights, benefits and obligations of any Person named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person.

15.13. <u>Governing Law</u>.  Unless a rule of law or procedure is supplied by federal law, including the Bankruptcy Code and Bankruptcy Rules, (a) the construction and implementation of this Plan and any agreements, documents, and instruments executed in connection with this Plan, and (b) governance matters, shall be governed by the laws of the State of Texas, without giving effect to the principles of conflict of law thereof.

15.14. <u>Notice of Effective Date</u>.  On or before five Business Days after the occurrence of the Effective Date, the Reorganized Debtor shall mail or cause to be mailed to all holders of Claims a notice that informs such Persons of (a) the entry of the Confirmation Order, (b) the occurrence of the Effective Date, and (c) such other matters as the Reorganized Debtor deems appropriate or as may be ordered by the Bankruptcy Court.

15.15. <u>Waiver of Stay</u>.  Notwithstanding Bankruptcy Rules 3002(e), 6004(h), and 6006(d), the Debtor shall be authorized to consummate this Plan and the transactions and transfers contemplated thereby immediately after entry of the Confirmation Order.

15.16. <u>Modification of Plan</u>.  The Plan Proponents may alter, amend, or modify this Plan or any Plan Documents under Bankruptcy Code § 1127(a) at any time prior to the Confirmation Date.  After the Confirmation Date and prior to the Effective Date, the Plan Proponents may, under Bankruptcy Code § 1127(b), (i) amend this Plan so long as such amendment shall not materially and adversely affect the treatment of any holder of a Claim, (ii) institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan, the Disclosure Statement, or the Confirmation Order, and (iii) amend this Plan as may be necessary to carry out the purposes and effects of this Plan so long as such amendment does not materially or adversely affect the treatment of holders of Claims or Equity Interests under this Plan; provided, however, prior notice of any amendment shall be served in accordance with the Bankruptcy Rules or Order of the Bankruptcy Court.

15.17. <u>Entire Agreement</u>. The Plan and the Plan Documents set forth the entire agreement and understanding among the parties relating to the subject matter of the Plan and the satisfaction of all Claims and interests provided in the Plan. No party shall be bound by any terms, conditions, definitions, warranties, restrictions, understandings, agreements, representations, obligations, or other requirements except for those expressly provided in the Plan and the Plan Documents, which shall supersede all prior discussions, documents, instruments, understandings, and agreements regarding the subject of the Plan and the Plan Documents.

15.18. <u>Orders in aid of Confirmation</u>. Pursuant to Sections 105, 1141, 1142, and 1143 of the Bankruptcy Code, the Bankruptcy Court may enter one or more orders in aid of confirmation of this Plan.

Dated: June 14, 2011.

Respectfully submitted,

**CONTINENTAL COMMON, INC.**


*/s/ Melissa S. Hayward, counsel*
Melissa S. Hayward
  Texas Bar No. 24044908
  MHayward@FSLHlaw.com
**FRANKLIN SKIERSKI LOVALL HAYWARD LLP**
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110
**ATTORNEYS FOR CONTINENTAL COMMON, INC.**

-and-

**PNC BANK, N. A.**


*/s/ Bradley R. Foxman, one of counsel*
William L. Wallander
  Texas Bar No. 20780750
  BWallander@VElaw.com
Bradley R. Foxman
  Texas Bar No. 24065243
  bfoxman@velaw.com
**VINSON & ELKINS L.L.P.**
3700 Trammell Crow Center
2001 Ross Avenue

Dallas, TX 75201
Fax: (214) 220-7716
**ATTORNEYS FOR PNC BANK, N.A.**

# EXHIBIT A

## [Executory Contracts to be Assumed and Cure Amounts]

| Plan Exhibit A-Executory Contracts and Leases and Cure Amounts | | | |
|---|---|---|---|
| **Name** | **Basis of Contract** | **Cure Amount** | **2010 CAM/Tax Reconciliation** |
| A1 Service Inc.<br>555 Coolidge St.<br>Jefferson, LA 70121 | Mat Cleaning Contract | $909.08 | |
| A2D Technologies<br>2345 Atascocita Road<br>Humble, TX 77396 | 1010 Common Building<br>Commercial Office Lease of 2,268 sf<br>08/16/2004 - 10/31/2014 | $108.16 | * |
| AAWJ, LLC<br>1010 Common St., Ste. 2640<br>New Orleans, LA 70112 | 1010 Common Building<br>Commercial Office Lease of 2,151 sq.ft.<br>04/13/2006  -  04/30/2010 | $1,218.20 | * |
| ABM Security Services<br>Dept 1088-03, P.O. Box 61000<br>San Francisco, CA 94161 | Security Contract | $59,580.59 | |
| ACCESSCOM, Inc.<br>727 High Street<br>Houma, LA 70360 | 1010 Common Building<br>Commercial Office Lease of 9000 sf<br>07/01/2007  -  06/30/2017 | $0.00 | |
| Advocacy Center<br>1010 Common St., Ste. 2600<br>New Orleans, LA 70112 | 1010 Common Building<br>Commercial Office Lease of 9,435 sf<br>04/17/2006 - 04/30/2011 | $5,350.74 | * |
| ALLFAX Capital LLC<br>130 James Drive East<br>Saint Rose, LA 70087 | Copier Lease | $584.82 | |
| American Commercial Security<br>7324 South West Freeway, #1400<br>Houston, TX 77074 | 1010 Common Building<br>Commercial Office Lease of 2,531 sf<br>12/01/2004 - 11/30/2012 | $504.91 | * |
| Associated Design Group<br>1010 Common St., Ste. 2405<br>New Orleans, LA 70112 | 1010 Common Building<br>Commercial Office Lease of 2,978 sf<br>10/01/2006 - 08/31/2012 | $1,692.13 | * |
| AT&T<br>P.O. Box 105262<br>Atlanta, GA 30348 | Telephone Contract | $288.31 | |
| Autoimmune Technologies LLC<br>1010 Common St., Ste. 1705<br>New Orleans, LA 70112 | 1010 Common Building<br>Commercial Office Lease of 911 sf<br>02/01/2007 - 01/31/2012 | $36.00 | * |
| Bienvenu, Foster, Ryan & Obannon<br>1010 Common St., Ste. 2200<br>New Orleans, LA 70112 | 1010 Common Building<br>Commercial Office Lease of 12,184 sf<br>01/01/2001 - 02/28/2013 | $0.00 | |

| | | | |
|---|---|---|---|
| Bruce Spizer<br>1010 Common St., Ste. 1964<br>New Orleans, LA 70112 | 1010 Common Building<br>Commercial Office Lease of 1,720 sf<br>08/01/2004 - 10/31/2014 | $82.84 | * |
| Carl V. Williams & Assoc.<br>1010 Common St., Ste. 2402<br>New Orleans, LA 70112 | 1010 Common Building<br>Commercial Office Lease of 461 sf<br>08/15/2009 - 08/31/2012 | $27.38 | * |
| Carrier Commercial Services<br>P.O. Box 905303<br>Charlotte, NC 28290 | HVAC Contract | $6,850.67 | |
| Charles Schwab & Co., Inc.<br>1010 Common St., Ste. 101A<br>New Orleans, LA 70112 | 1010 Common Building<br>Commercial Office Lease of 4,566 sf<br>09/15/2006 - 09/30/2011 | $2,588.03 | * |
| Collins & Marshall<br>1010 Common St., Ste. 2360<br>New Orleans, LA 70112 | 1010 Common Building<br>Commercial Office Lease of 1,655 sf<br>09/01/2009 - 08/31/2012 | $104.61 | * |
| Consolidated Financial Group<br>1010 Common St., Ste. 2920<br>New Orleans, LA 70112 | 1010 Common Building<br>Commercial Office Lease of 1,987 sf<br>11/01/1999 - 09/30/2012 | $0.00 | |
| Couture & Soileau, LLC<br>1010 Common St., Ste. 2910<br>New Orleans, LA 70112 | 1010 Common Building<br>Commercial Office Lease of 3,290 sf<br>07/01/1999 - 08/31/2012 | $209.80 | * |
| Crystal Clear Vision<br>1401 Moisant Street<br>Kenner, LA 70062 | Window Cleaning Contract | $995.00 | |
| David J. McMahon<br>1010 Common St., Ste. 3050<br>New Orleans, LA 70112 | 1010 Common Building<br>Commercial Office Lease of 876 sf<br>01/18/2006 - 12/31/2012 | $0.00 | |
| Davillier Law Group<br>1010 Common St., Ste. 2510<br>New Orleans, LA 70112 | 1010 Common Building<br>Commercial Office Lease of 2,759 sf<br>02/22/2008 - 02/29/2012 | $0.00 | |
| Denechauld & Denechauld<br>1010 Common St., Ste. 3010<br>New Orleans, LA 70112 | 1010 Common Building<br>Commercial Office Lease of 3,883 sf<br>11/05/2004 - 11/30/2010 | $0.00 | |
| Digital Legal Services<br>1010 Common St., Ste. 910<br>New Orleans, LA 70112 | 1010 Common Building<br>Commercial Office Lease of 7,106 sf<br>01/12/2006 - 01/31/2013 | $5,067.57 | * |
| Distinctive Mgmt Services<br>1010 Common St., Ste. 1830<br>New Orleans, LA 70112 | 1010 Common Building<br>Commercial Office Lease of 767 sf<br>08/18/2010 - 08/31/2011 | $0.00 | |
| Dr. Coutin & Dr. Bennett<br>1010 Common St., Ste. 810<br>New Orleans, LA 70112 | 1010 Common Building<br>Commercial Office Lease of 2,996 sf<br>10/15/2006 - 10/31/2016 | $1,705.06 | * |

| | | | |
|---|---|---|---|
| Dr. H. Robert Norman<br>920 Twin Bridges Road, Apt. 21<br>Alexandria, LA 71303 | Ground Lease | $0.00 | |
| Easter Seal Society of LA<br>1010 Common St., Ste. 2000<br>New Orleans, LA 70112 | 1010 Common Building<br>Commercial Office Lease of 2,550 sf<br>03/12/2007 - 03/31/2012 | $102.00 | * |
| Ed Sherman<br>1010 Common St., Ste. 1750<br>New Orleans, LA 70112 | 1010 Common Building<br>Commercial Office Lease of 3,007 sf<br>12/01/1999 - 11/30/2009 | $606.77 | * |
| Eden Healthcare Services, LLC<br>1010 Common St., Ste. 2410<br>New Orleans, LA 70112 | 1010 Common Building<br>Commercial Office Lease of 1,569 sf<br>04/13/2010 - 10/31/2011 | $0.00 | |
| Empire Janitorial Sales & Services<br>3510 Causeway Blvd., Ste. 505<br>Metairie, LA 70002 | Janitorial Supplies Contract | $10,003.16 | |
| Eustis Commercial Mortgage<br>1010 Common St., Ste. 2400<br>New Orleans, LA 70112 | 1010 Common Building<br>Commercial Office Lease of 2,272 sf<br>12/15/2007 - 12/31/2012 | $0.00 | |
| Express Watchmakers, Inc.<br>1010 Common St., Ste. 103A<br>New Orleans, LA 70112 | 1010 Common Building<br>Retail Lease of 1,003 sf<br>06/01/2010 - 05/31/2013 | $0.00 | |
| Fontana, Seelman & Landry<br>1010 Common St., Ste. 2300<br>New Orleans, LA 70112 | 1010 Common Building<br>Commercial Office Lease of 4,417 sf<br>02/15/2008 - 02/28/2013 | $0.00 | |
| Frank Letellier III<br>119 Highway 1077<br>Madisonville, LA 70447-9665 | Ground Lease | $0.00 | |
| Frank's Casing Crew & Rental<br>1010 Common St., Ste. 2150<br>New Orleans, LA 70112 | 1010 Common Building<br>Commercial Office Lease of 577 sf<br>04/01/2009 - 03/31/2012 | $34.19 | * |
| George Porter, M.D.<br>1010 Common St., Ste. 2020<br>New Orleans, LA 70112 | 1010 Common Building<br>Commercial Office Lease of 1,913 sf<br>02/01/2004 - 01/31/2011 | $117.55 | * |
| Golden Leaf Energy LLC<br>1010 Common St., Ste. 2970<br>New Orleans, LA 70112 | 1010 Common Building<br>Commercial Office Lease of 1,392 sf<br>07/20/2010 - 10/31/2013 | $0.00 | |
| Gonzales Tailoring<br>1010 Common St., Ste. 106A<br>New Orleans, LA 70112 | 1010 Common Building<br>Retail Lease of 670 sf<br>09/01/2007 - 08/31/2013 | $26.00 | * |
| Henry Consulting, LLC<br>1010 Common St., Ste. 2500<br>New Orleans, LA 70112 | 1010 Common Building<br>Commercial Office Lease of 6,730 sf<br>01/01/2007 - 12/31/2012 | $0.00 | |

| | | | |
|---|---|---|---|
| Hunter McFadden<br>205 Fairway Drive<br>New Orleans, LA 70124 | Ground Lease | $0.00 | |
| International Building Services<br>P.O. Box 59975<br>Dallas, TX 75229 | Janitorial & Day Porter Contract | $43,706.95 | |
| Jackson & McPherson<br>1010 Common St., Ste. 1800<br>New Orleans, LA 70112 | Tenant Improvements | $25,861.59 | |
| Jackson & McPherson<br>1010 Common St., Ste. 1800<br>New Orleans, LA 70112 | 1010 Common Building<br>Commercial Office Lease of 3,620 sf<br>07/06/2010 - 06/30/2012 | $1,905.22 | * |
| Jackson & McPherson<br>1010 Common St., Ste. 1800<br>New Orleans, LA 70112 | 1010 Common Building<br>Commercial Office Lease of 5,881 sf<br>01/22/1999 - 05/31/2015 | $0.00 | |
| James E. Ryder<br>1010 Common St., Ste. 1810<br>New Orleans, LA 70112 | 1010 Common Building<br>Commercial Office Lease of 906 sf<br>06/01/2001 - 05/31/2015 | $264.85 | * |
| Jerome S. Fertel<br>16 Charway Way<br>Hot Springs Village, AR 71909 | Ground Lease | $0.00 | |
| Jim Raymond<br>1010 Common St., Ste. 2620<br>New Orleans, LA 70112 | 1010 Common Building<br>Commercial Office Lease of 877 sf<br>11/01/2002 - 11/30/2010 | $605.67 | * |
| Joe Young, Jr.<br>1010 Common St., Ste. 2340<br>New Orleans, LA 70112 | 1010 Common Building<br>Commercial Office Lease of 1,283 sf<br>06/19/2007 - 06/30/2011 | $52.00 | * |
| L&B Laboratories<br>1010 Common St., Ste. 2010<br>New Orleans, LA 70112 | 1010 Common Building<br>Commercial Office Lease of 1,587 sf<br>06/15/2006 - 06/30/2011 | $895.68 | * |
| Landry & Swarr<br>1010 Common St., Ste. 2050<br>New Orleans, LA 70112 | 1010 Common Building<br>Commercial Office Lease of 1,147 sf<br>08/01/2008 - 07/31/2013 | $2,860.27 | * |
| Landry & Swarr<br>1010 Common St., Ste. 2050<br>New Orleans, LA 70112 | 1010 Common Building<br>Commercial Office Lease of 4,172 sf<br>01/04/2002 - 07/31/2013 | $0.00 | |
| Life Time Personnel Care<br>1010 Common St., Ste. 2660<br>New Orleans, LA 70112 | 1010 Common Building<br>Commercial Office Lease of 940 sf<br>03/20/2006 - 03/31/2012 | $64.23 | * |
| Louisiana Philharmonic Orchestra<br>1010 Common St., Ste. 2120<br>New Orleans, LA 70112 | 1010 Common Building<br>Commercial Office Lease of 3,381 sf<br>05/01/2006 - 04/30/2011 | $1,917.38 | * |

| | | | |
|---|---|---|---|
| Melody Stern<br>60-11 Broadway, Apt 6W<br>Woodside, NY 11377 | Ground Lease | $0.00 | |
| Merrill T. Landwehr<br>1010 Common St., Ste. 1710<br>New Orleans, LA 70112 | 1010 Common Building  Commercial Office Lease of 1,182 sf  01/12/2006 - 12/31/2011 | $77.59 | * |
| Metropolitan Human Services<br>1010 Common St., Ste. 510<br>New Orleans, LA 70112 | 1010 Common Building  Commercial Office Lease of 7,929 sq. ft.  2/16/2009 - 2/28/2011 | $0.00 | |
| MFR, P.C.<br>1010 Common St., Ste. 2350<br>New Orleans, LA 70112 | 1010 Common Building  Commercial Office Lease of 1,974 sf  04/01/2009 - 03/31/2012 | $125.88 | * |
| Murphy & North CPA<br>1010 Common St., Ste. 2440<br>New Orleans, LA 70112 | 1010 Common Building<br>Commercial Office Lease of 3,657 sf<br>11/01/2000 - 12/31/2013 | $0.00 | |
| Muzak LLC<br>P.O. Box 71071<br>Charlotte, NC 28272 | Music Contract | $0.00 | |
| New Orleans Opera Association<br>1010 Common St., Ste. 1820<br>New Orleans, LA 70112 | 1010 Common Building<br>Commercial Office Lease of 3,213 sf<br>12/13/2005 - 12/31/2011 | $1,828.35 | * |
| O'Bryon & Schnabel, PLC<br>1010 Common St., Ste. 1950<br>New Orleans, LA 70112 | 1010 Common Building<br>Commercial Office Lease of 3,304 sf<br>04/01/2009 - 04/30/2013 | $219.40 | * |
| Pedelahore<br>1010 Common St., Ste. 2100<br>New Orleans, LA 70112 | 1010 Common Building<br>Commercial Office Lease of 5,959 sf<br>12/01/2001 - 12/31/2013 | $386.62 | * |
| Plant Gallery<br>9401 Airline Drive<br>New Orleans, LA 70118 | Interior & Exterior Plant Contract | $901.72 | |
| Ponder Law<br>1010 Common St., Ste. 1715<br>New Orleans, LA 70112 | 1010 Common Building<br>Commercial Office Lease of 851 sf<br>08/01/2009 - 07/31/2012 | $46.66 | * |
| Pontchartrain Park CDC<br>1010 Common St., Ste. 2550<br>New Orleans, LA 70112 | 1010 Common Building<br>Commercial Office Lease of 2,308 sf<br>05/01/2009 - 04/30/2014 | $146.72 | * |
| Pratt Landry Associates<br>530 South Jefferson Parkway<br>New Orleans, LA 70119 | Fire Alarm Contract | $1,400.00 | |
| Premium Parking Services<br>1010 Common St., Suite 2950<br>New Orleans, LA 70112 | Parking Contract | $0.00 | |

| | | | |
|---|---|---|---|
| Premium Parking Services<br>1010 Common St., Suite 2950<br>New Orleans, LA 70112 | 1010 Common Building<br>Commercial Office Lease of 3,084 sf<br>04/23/2010 - 04/30/2013 | $0.00 | |
| Regis Realty I, LLC<br>700 Broadway Ave. East<br>Mattoon, IL 61938 | Property Management services | $36,802.49 | |
| River Parish Disposal Inc<br>7201 Airline Drive<br>Metairie, LA 70003 | Garbage & Trash Removal Contract | $4,517.53 | |
| Sargent & Herkes, Inc.<br>1010 Common St., Suite 2760<br>New Orleans, LA 70112 | 1010 Common Building<br>Commercial Office Lease of 1,280 sf<br>10/02/2006 - 03/31/2011 | $84.91 | * |
| Schindler Elevator Corp<br>P.O. Box 93050<br>Chicago, IL 60673 | Elevator Contract | $279.15 | |
| Sierra Leone Int'l Ship Reg.<br>1010 Common St., Suite 2533<br>New Orleans, LA 70112 | 1010 Common Building<br>Commercial Office Lease of 1,469 sf<br>06/10/2005 - 02/28/2011 | $495.65 | * |
| Southeast Louisiana Legal Services<br>P.O. Drawer 2867, Suite A1400<br>Hammond, LA 70404 | 1010 Common Building<br>Commercial Office Lease of 1,858 sf<br>09/15/2006 - 03/31/2013 | $0.00 | |
| Southeast Louisiana Legal Services<br>P.O. Drawer 2867<br>Hammond, LA 70404 | 1010 Common Building<br>Commercial Office Lease of 11,147 sf<br>02/01/2003 - 03/31/2013 | $0.00 | |
| Sprint<br>P.O. Box 4181<br>Carol Stream, IL 60197 | Telephone Contract | $0.00 | |
| Stampley & Smith<br>1010 Common St., Suite 1740<br>New Orleans, LA 70112 | 1010 Common Building<br>Commercial Office Lease of 2,435 sf<br>11/01/2002 - 01/31/2013 | $1,672.89 | * |
| Steven Medo, Jr.<br>1010 Common St., Suite 2450<br>New Orleans, LA 70112 | 1010 Common Building<br>Commercial Office Lease of 1,198 sf<br>11/01/2000 - 12/31/2013 | $0.00 | |
| Stifel, Nicolaus & Company<br>ATTN: Josh Weigmann<br>Saint Louis, MO 63102 | 1010 Common Building<br>Commercial Office Lease of 6,719 sf<br>02/01/2003 - 07/31/2013 | $0.00 | |
| Suite 3000, LLC<br>1010 Common St., Suite 3000<br>New Orleans, LA 70112 | 1010 Common Building<br>Commercial Office Lease of 6,095 sf<br>01/01/1999 - 12/31/2013 | $3,158.19 | * |
| The Wine Bistro<br>1010 Common St., Suite A110<br>New Orleans, LA 70112 | 1010 Common Building<br>Retail Lease of 5,536 sf<br>09/20/2010 - 09/30/2013 | $0.00 | |

| | | | |
|---|---|---|---|
| US Army Recruiting<br>USACE Finance Cneter CEFC-AO<br>5720 Integrity Drive<br>Millington, TN 38054-5005 | 1010 Common Building<br>Commercial Office Lease of 1,573 sf<br>10/14/2008 - 10/13/2013 | $0.00 | |
| Valteau, Harris, Koenig, Mayer<br>1010 Common St., Suite 2700<br>New Orleans, LA 70112 | 1010 Common Building<br>Commercial Office Lease of 3,242<br>02/14/2006 - 02/28/2011 | $1,840.11 | * |
| Vudoo Snack Shop<br>1010 Common St., Suite C0150<br>New Orleans, LA 70112 | 1010 Common Building<br>Retail Lease of 749 sf<br>07/01/2009 - 06/30/2012 | $0.00 | |
| Warren Goldstein<br>1010 Common St., Suite 1703<br>New Orleans, LA 70112 | 1010 Common Building<br>Commercial Office Lease of 521 sf<br>10/01/2006 - 09/30/2011 | $20.00 | * |
| Weatherford<br>515 Post Oak Blvd., Suite 600<br>Houston, TX 77027 | 1010 Common Building<br>Commercial Office Lease of 11,058 sf<br>09/01/1999 - 08/31/2012 | $444.00 | * |
| | **Total cure amounts** | **$231,375.27** | |
| | **Total cure amounts less 2010 reconciliations\*** | **$192,681.06** | |

* These amounts, which total $38,694.21, are for 2010 CAM and tax reconciliations and will be offset in the ordinary course of business from future rents owed by the respective tenant. The Debtor owes no other cure amounts to these repective tenants.